2 Ill. App.3d 626 (1971)
276 N.E.2d 761
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
JIMMIE LEE WILKES, Defendant-Appellant.
No. 70-32.
Illinois Appellate Court  Third District.
December 16, 1971.
*627 *628 Bruce Stratton, of Ottawa, (John Barton, of counsel,) for appellant.
Louis R. Bertani, State's Attorney, of Joliet, (Herman Haase, Assistant State's Attorney, of counsel,) for the People.
Judgment affirmed.
Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Jimmie Lee Wilkes, defendant, was found guilty of the murder of Thomas Nelson (in the Circuit Court of Will County). Defendant waived trial by jury and, as a result of a bench trial, he was sentenced to the penitentiary for a term of not less than 35 nor more than 50 years. On appeal in this Court, defendant contends that he was not proven guilty of murder since the proof showed instead that he was acting in self-defense. He also contends that the killing of Thomas Nelson was not murder in any event but only voluntary manslaughter since he was provoked by the deceased. Other issues are raised which will be discussed later in this opinion.
The evidence in the record indicates that on the afternoon of March 7, 1969, defendant entered a tavern in Joliet about 3:00 P.M. The owner of the tavern was there together with defendant's mother, two encyclopedia salesmen and Thomas Nelson, a garbage collector. Nelson was a refuse hauler who serviced the tavern and was there at the time for such purpose. The mother of defendant performed cleaning duties at the *629 tavern. The book salesmen, John W. Moore and a Mr. Bernstein, were attempting to make a sale of encyclopedias to defendant's mother.
On the basis of the testimony of the owner of the tavern and John W. Moore, it appears that the defendant, who was intoxicated, entered the tavern and asked for a drink but was refused service by the bartender. Defendant then asked Nelson to buy him a drink and was again refused after which defendant went to a table where the book salesmen were talking to his mother. There defendant "bummed" a cigaret from Moore and also asked Moore to buy him a beer. Nelson, who was playing a pinball machine nearby told defendant, "Sit down and shut up". When defendant responded that he did not have to do so, Nelson invited him to go outside and stated, "I am going to whip your tail". There were variations by the witnesses as to what Nelson actually had said but the effect was that defendant was invited by decedent to go outside the tavern. Defendant then left by the rear door of the tavern and Nelson walked out close behind. Only seconds expired before a shot was heard. Clayton, the owner, and Moore then came out and found Nelson lying on the ground a short distance from his truck which was parked on the east side of the building. He was bleading, and subsequent medical evidence disclosed that he had been struck by a bullet which had entered his jaw and passed down into his neck. Both witnesses testified they saw defendant walking away and that there was no other person in sight.
Defendant in testifying on his own behalf, stated that there had been a verbal exchange between Nelson and himself, and that he, the defendant, had gone out the back door to escape Nelson after the latter had threatened to "whip my ass". He stated he was walking along the east side of the building intending to go to another tavern when Nelson came around the corner, called to defendant to stop and repeated his threat. When Nelson reached a point about 10 feet away, according to defendant, he reached into his pocket and withdrew a shiny object which defendant thought was a knife and started to come toward defendant, whereupon defendant drew his gun and fired a shot. Defendant, as he was being cross-examined, stated that Nelson had a "pretty big pocket knife", and then denied that he had seen a knife with a curved blade, but stated that he had seen Nelson with a knife before that time and for this reason he had avoided arguments with the decedent. He admitted that he walked away from the shooting but claimed to have little memory about subsequent events.
Various prosecution witnesses, including Clayton (the tavern owner), Moore, police officers who came to the scene, and a medical attendant, all testified that no weapons were found at the site of the shooting or on Nelson's person or in his clothing. When a police officer questioned *630 defendant immediately after his arrest, the officer stated that defendant was asked three different times to tell what had occurred outside the tavern. During the first two responses defendant made no mention of the deceased having a weapon but stated in substance that no words had been exchanged in the parking lot and that defendant had drawn his gun and shot Nelson as soon as he appeared. He stated he had done so because Nelson was "messing around with him". In his third explanation, defendant said that Nelson was armed with a curve-bladed knife. On cross-examination during the trial defendant said he could not remember his conversation with the officer.
 1, 2 Even though the ultimate burden is on the State to prove that defendant's act was criminal, since defendant admits having fired the fatal shot, evidence must be shown of circumstances justifying, mitigating or excusing his act, unless the circumstances were sufficiently manifest from the proof of the prosecution. (People v. McCreary, 29 Ill.2d 295.) Defendant contends that since his testimony standing alone and unrefuted in the record must be taken as true, the court should have found that he acted in self-defense. He also argues alternatively, that the court should have found that at the most, his belief that he was about to be attacked by Nelson was unreasonable, and that his subsequent crime could only be voluntary manslaughter rather than murder (Ill. Rev. Stat. 1969, ch. 38 par. 9-2(b)). This, however, is not the rule in this State where it has frequently been held that where a defendant's statement is contradicted by facts and circumstantial evidence, the trier of fact need not believe the statement of defendant even though it is not directly contradicted by other eye-witnesses (People v. Warren, 33 Ill.2d 168; People v. Herron, 125 Ill. App.2d 18). The trial court emphasized that there had been no actual fight between the defendant and the decedent; that defendant had not left the tavern to go out into the street where he would have been away from the problems but had gone through the rear door of the tavern to invite a conflict; and, also, by his own statement, the decedent was at least 10 feet away from him when he fired.
 3 On the issue as to whether or not defendant would have been required to be found guilty of nothing more than voluntary manslaughter, it is obvious that this contention rests on the testimony that Nelson was threatening defendant with a knife when defendant fired the fatal shot. As we have noted, no such weapon was seen or found on or near decedent's body even though two witnesses arrived at the scene immediately after the shooting. It is also noted, and probably was so noted by the trial court, that defendant failed to mention a knife or to *631 claim self-defense until he described the occurrence to the police for the third time. Also, his trial description of the knife referred to differed materially from his pre-trial description. The court probably also noted that defendant left the scene without seeking medical assistance for the victim or reporting the incident to the police. The trial court necessarily found that defendant's conduct indicated that there was no basis in the record for a finding of voluntary manslaughter based on the standards in par. 9-2(b) of the Criminal Code, supra. On the basis of a review of the record, it is apparent that the trial court was justified in rejecting the claim of self-defense. On the record made, the court had a sufficient basis for finding defendant guilty of murder. People v. Slaughter, 29 Ill.2d 384.
Defendant also contends that the trial court erred in denying his motion for discharge under the terms of section 103-5 of the Criminal Code. (Ill. Rev. Stat., 1969 ch. 38.) This provision directs that an accused must be tried within 120 days after he is taken into custody for an offense. The record discloses that defendant was arrested on March 7, 1969, and held on a charge of attempted murder, but that after the victim died a week later, the charge was dropped and one of murder was substituted therefor. The trial was set for July 3, 1969. On that date, the State presented a motion for continuance of 60 days supported by an affidavit and a transcript of Moore's testimony at the coroner's inquest. The affidavit substantially averred that Moore had moved away from the city; that he was believed to be in California; that investigators were trying to locate him; that Moore's testimony would produce evidence material to the case, particularly with reference to identification and the issue of self-defense; and that the State had not known of Moore's departure until an attempt had been made to serve him with a subpoena. It was apparent from both the affidavit and the transcript that Moore could give evidence relating to the charge against defendant and the motion was allowed over defendant's objections.
 4-6 Section 103-5 referred to, provides for a continuance at the instance of the State if the court determines that the State has exercised, without success, due diligence to obtain evidence "material to the case" and that there are reasonable grounds to believe that such evidence may be obtained at a later date. In such event the court could continue the cause on application of the State for not more than an additional 60 days. Defendant agrees that the granting of the application is within the discretion of the trial judge (People v. Wollenberg, 37 Ill.2d 480; People v. Poland, 22 Ill.2d 175.) Defendant, however, contends that there was an abuse of discretion for the reason that the evidence sought by *632 the State, viz. The testimony of Moore, did not meet the statutory condition that it be "material to the case". This is based on the premise that since Moore was a non-occurrence witness, he could not testify either as to defendant's conduct or as to a state of mind. We do not agree with this contention. In People v. Ruffin, 406 Ill. 437, 443, the Supreme Court stated that "in a criminal case the material facts are the final essential elements of the crime, being the ultimate conclusion of fact from every variety of evidence tending to establish them". Obviously, therefore, any evidence tending to establish the ultimate facts would be "material to the case" which is all that Section 103-5(c) requires. It was apparent from the affidavit and transcript that the trial court find that Moore could give evidence tending to establish that a homicide had occurred and that defendant had committed it, and even defendant's own reliance on part of Moore's testimony to aid his claim of reasonable fear and self-defense, indicates that the evidence given by the witness was in fact "material to the case". It is clear, therefore, that the continuance was properly granted and that the court did not err in denying defendant's motion for discharge.
While witness Moore was being cross-examined, it was disclosed that he had talked to the State's Attorney on an occasion prior to the trial. No stenographer was present, but, according to the further testimony of Moore, a tape recorder was employed into which the State's Attorney would speak, after Moore had been asked and had answered a question. In describing the procedure Moore said, "He would ask a question and I would give an answer and then he would repeat the answer and record it". When this was shown, defense counsel made a request that he be furnished with a copy of the transcript of the tape for possible impeachment purposes. The prosecutor objected, however, arguing that the tape did not contain verbatim answers of the witness but rather a summary of the answers as dictated by the prosecutor. A transcribed copy of the tape was submitted to the court for inspection and the prosecutor stated specifically that he did not believe that he handed the memorandum to Moore or that Moore had ever read it. Moore had never signed it. The prosecutor stated that he utilized the procedure instead of writing down notes. He asserted that it was not a statement that is verbatim in any way. The court stated, "No, it is a narrative statement. I will deny the motion".
 7 While we do not have the tape or memorandum subscribed therefrom before us, it is our opinion, based on the record and applicable authorities, that a copy of the memorandum should have been made available to defendant for impeachment purposes. This principle has *633 been recited to be based upon a "right sense of justice" and as stated in People v. Allen, 47 Ill.2d 57, 59:
"The prosecution on demand is required to furnish an accused for possible impeachment use specific statements in its possession or control which were made by a State's witness, which have been shown to exist and which are in the witness' own words or substantially verbatim."
This obligation extends to police reports and even interdepartmental records (People v. Cagle, 41 Ill.2d 528; People v. Golson, 37 Ill.2d 419). Since People v. Wolff, 19 Ill.2d 318, 327 (where the guidelines for the application of the rule were laid down), it has been settled that where no privilege exists and where the competency or relevancy of a report have been established, the trial judge has no discretion in the matter but must "order the document delivered directly to the accused for his inspection and use for impeachment purposes". The principle in such case is that the value or lack of value of such document, report or statement is to be determined by the accused and not by the prosecutor (People v. Allen, 47 Ill.2d 57, 60).
The State makes no claim that the memorandum was privileged, incompetent or irrelevant but contends simply that no statement was shown to exist for the reason that the memorandum was a summary of the words of the prosecutor, rather than a statement consisting of specific questions put to Moore and his answers thereto. A comparable argument was advanced in People v. Allen, supra, and was rejected. In that case the police officer testified that he had made a written report of the incident which led to the defendant's arrest, the report being in form of a complaint sheet upon which the officer had written a summary of what had occurred at the time of the arrest. The trial court ruled that the defense was not entitled to a copy of the report, and, in seeking to sustain the ruling, the State argued that the report was but a "police blotter" notation and not a statement capable of being used by the accused for impeachment purposes. In the Allen case (as was also true in the instant case), the record on appeal did not disclose the content of the report, but the Supreme Court disposed of the State's contention by saying, "We are not aware of any de minimis rule, so to speak, regarding statements, which the State's argument suggests. Thus, even if the statement or report of the officer was not precisely as his testimony indicates, the defendant had a right to examine the report the State deprecates here. The trial court should have directed its production."
 8, 9 We find no basis for a different result here. The content of the memorandum was such that we can see no distinction between the summary *634 of a police officer setting forth the incidents of an arrest and a summary by a State's Attorney or Assistant State's Attorney of a statement by a prospective witness. As stated in People v. Wolff, 19 Ill.2d 318, 323, an accused may properly make a demand for "specific statements which have been written by the witness or, if orally made, as recorded by agents of the government". Under the circumstances, we believe that the trial court should have ordered its production.
 10, 11 In our analysis of the effect of the denial of the request for production of the memorandum, however, we feel that defendant was not so prejudiced by the court's refusal as to require that the judgment of conviction be reversed in this case. In determining whether the erroneous exclusion or admission of evidence requires reversal, courts of review will look to the entire record to see if the rejected evidence could reasonably have affected the finding of the trier of fact, and will refuse to disturb a judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence, a different result could not have been reached. (People v. Wolff, 19 Ill.2d 318, 328; People v. Pelkola, 19 Ill.2d 156, 162-3.) The important aspects of Moore's testimony related to the verbal exchange between defendant and decedent inside the tavern; to the absence of a weapon on or near decedent's body immediately after the shooting; and to the circumstance that defendant walked away from the scene. As to each of these matters, Moore was corroborated by Clayton, the tavern owner, who was unimpeached, and on the important question of whether a weapon was found on or near the decedent, the testimony of both Moore and Clayton was further corroborated by testimony of police officers and the medical attendant. The testimony of defendant on the same subject was weakened by his failure when first questioned by police, to mention that decedent was armed or to claim he had acted in self-defense. We also note that Moore's testimony at the coroner's inquest, which is in the record before us, was completely consistent with his testimony at the trial. Under all the circumstances, and in view of the nature of the bench trial from which this appeal is taken, we think it improbable that anything contained in the refused memorandum would have cast doubt on Moore's veracity or have served to produce a different result in the case. We note that the trial court, in fact, looked at the memorandum at the time it ruled on its admissibility.
 12, 13 Defendant likewise asserts on appeal that the sentence of 35 to 50 years is excessive under the circumstances of the case. When a claim of this nature is made in a court of review it has been the policy of the court not to disturb such sentence unless it is greatly at variance with the spirit and purpose of the law, so that the penalty is manifestly in excess of the proscription of the Illinois Constitution, which requires *635 that all penalties shall be proportionate to the nature of the offense. (People v. Fox, 48 Ill.2d 239; People v. Taylor, 33 Ill.2d 417.) Here defendant was found guilty of one of the most serious crimes against society resulting in the killing of a human being. The trial judge, who was in the best position to determine the punishment to be imposed, was confronted with the record which gave no convincing or satisfactory support to defendant's claim of justification and self-defense. Under the circumstances, we do not believe we would be justified in stating that the sentence was improper, particularly since it was well within the limits imposed by statute and there is nothing to indicate that it was the result of any bias, prejudice or abuse of discretion. People v. Fortson, 110 Ill. App.2d 206.
For the reasons stated, the judgment of the Circuit Court of Will County is affirmed.
Judgment affirmed.
DIXON, J. concurs.
Mr. JUSTICE STOUDER, concurring:
I agree with the result reached in the majority opinion and with most of the reasoning supporting such result. With respect to the statement in the possession of the State's Attorney relating to pre-trial statements of the witness Moore which the majority hold should have been produced for inspection, it is my opinion that this court on its own motion should have ordered supplementation of the record by including such excluded statement before determining either the propriety of the exclusion, or, in particular, whether or not prejudice resulted. There seems to have been some confusion of counsel in this case as to how the excluded statement should have been presented for review and the absence of the statement as part of the record on this appeal presents problems which we have resolved on the basis of reconstruction and speculation rather than upon the document itself, the contents of which were unknown to defendant's trial counsel and appellate counsel. As a guide to future controversies it seems to me that the defendant is obligated to make some effort to get excluded statements into the record thus enabling the court of review to more intelligently consider the dispute or to more properly assess the consequences of non-production.