THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERMAN JACKSON, Defendant-Appellant.

(No. 58250;

First District (5th Division)—November 2, 1973.

*Rehearing denied December 4, 1973.*

Howard T. Savage, of Chicago, (Howard O. Edmonds, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial defendant was found guilty of the crime of armed robbery [1] and sentenced to a term of 10 to 20 years. On appeal he contends:

1. He was denied due process;
   (a) by the refusal of the trial court to allow his request for representation by his own attorney at the preliminary hearing, and
   (b) because of the suggestive nature of the pretrial confrontation and the subsequent reception of identification testimony.
2. The identification evidence of him as the perpetrator of the crime was insufficient to support the conviction.

From the facts adduced it appears that on December 22, 1970, at 9:30 A.M., three men entered a small grocery store, owned by Charles and Florice Porter, and one of the men, Kenneth Murray, produced a gun and announced "they were holding up" the store. The gunman's accomplices grabbed Mrs. Porter, standing at the front of the store, by the arms and began pulling her towards a counter; the gunman "calling her all kinds of dirty names" and saying "he was going to blow her brains out." Thereupon, they ripped her apron and took the contents, cash and a check (made out for $4.03 and stamped on the back with the store's endorsement) and then rifled the cash register of its contents. Mr. Porter, who was in the back of the store, rushed down the aisle towards his wife and her assailants and as he approached, the gunman fired a short at him which missed. Defendants then fled with the money and the check.

The police were summoned and Officer Charles Johnson was given a description of the men by the Porters. Thereafter, a short distance from the robbery scene, Johnson observed someone fitting one of the descriptions. The suspect darted into a building and Johnson radioed for assistance, following which he and two other officers entered the building and proceeded to conduct a floor by floor search. On the top floor they found the suspect (defendant), earlier seen by Johnson. Defendant gave the officers the name of a person he said he was looking for in the building. When Johnson knocked on the apartment door he was informed that no one by that name lived there. Defendant was then arrested and, when searched, had currency totaling $56.41 and the check fo $4.03, stamped as heretofore described. He was taken to the police station where, a police officer testified, he named the persons who committed the crime with him as "Cowboy" and "Peewee", "Peewee" being Kenneth Murray, who defendant said was the gunman. Acting on this information the

---

[1] Ill. Rev. Stat. 1969, ch. 38, par. 18—2.

police arrested Kenneth Murray at his apartment and found a .45 caliber pistol in the bedroom where Murray was hiding. This weapon was later identified by the Porters and further linked to the robbery, via the fired bullet, by a firearms examiner.

Later, on the day of the robbery, Mr. Porter tentatively identified defendant through a one-way mirror at the police station, and Mrs. Porter identified defendant as one of the perpetrators of the crime. There is conflicting testimony concerning whether the police showed the $4.03 check to the Porters before or after the showup. Defendant testified he did not commit the robbery, stating he was in the area looking for an apartment, incident to his impending marriage.

A preliminary hearing was subsequently held, where defendant, appearing without counsel, requested a continuance in order to have his retained counsel represent him. Defendant's mother indicated he was to be represented by attorney James Montgomery, whose appearance was not on file at the time. The court appointed Kenneth Murray's counsel, over defendant's objections, to represent him at the hearing and, following testimony of the victims and the police, the court made a finding of probable cause. Subsequently, an indictment was returned against the defendant by the Grand Jury.

At the commencement of the trial the defendant made motions to suppress a confession and the in-court identification as well as a motion to quash the indictment. All were denied.

OPINION

Defendant first contends he was denied due process of law when the trial court disregarded his request to be represented by his own attorney at the preliminary hearing and further, that the trial court committed reversible error by appointing codefendant Kenneth Murray's attorney, over defendant's objections, to represent him.[2]

---

[2] Reporter's Transcript, February 25, 1971, pages 99-100.

"THE COURT: Mr. Jackson, do you have an attorney?

MR. JACKSON: I don't know.

THE COURT: Is there any family member or friends here on behalf of Jackson?

MR. JACKSON: My mother.

THE COURT: Are you Mrs. Jackson?

MRS. JACKSON: He's supposed to have an attorney.

THE COURT: Who is his attorney?

MRS. JACKSON: Montgomery.

THE COURT: Counsel do you find any conflict, at this time, in representing this defendant?

MR. DEFENSE COUNSEL: None whatsoever.

THE COURT: Is it agreeable for this attorney to represent you for the purposes of this hearing?  *  *  *

MR. JACKSON: No."

■■  At the time of the preliminary hearing herein, February 25, 1971, there was, under Illinois law, no constitutional right to a preliminary hearing. (*People v. Bonner*, 37 Ill.2d 553, 229 N.E.2d 527, *cert. den.* 392 U.S. 910, 88 S.Ct. 2067, 20 L.Ed.2d 1368; *People v. Petruso*, 35 Ill.2d 578, 221 N.E.2d 276. Subsequently changed by the adoption of the 1970 Illinois Constitution, article I, section 7; effective date, July 1, 1971.) However, under the holding of *Coleman v. Alabama* (June 22, 1970), 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, the preliminary hearing is deemed to be a "critical stage" of the criminal proceeding and, to that extent, a defendant is entitled to be represented by counsel. Moreover, the right to counsel guaranteed by the sixth and fourteenth amendments to the Federal Constitution, by section 8 of article I of the Illinois Constitution and by section 113—3 of the Code of Criminal Procedure, Ill. Rev. Stat. 1969, ch. 38, par. 113—3, includes the right to be represented by counsel of one's own choice. (*People v. Payne*, 46 Ill.2d 585, 264 N.E.2d 167; *People v. Green*, 42 Ill.2d 555, 248 N.E.2d 116.) Hence, defendant argues the prescription of *Coleman*, coupled with the right to counsel of one's choice, requires that this right be extended to include the preliminary hearing stage.

The State argues that the right to counsel of one's choice is not absolute, citing *People v. MacArthur*, 2 Ill.App.3d 1077, 278 N.E.2d 530. In *MacArthur*, counsel had been appointed for defendant and when the case was called for trial, defendant requested a continuance in order to retain counsel of his own choice. It was denied, with the court stating at page 1080:

> "Defendant was an indigent. He said nothing about the ability to employ a lawyer. He said nothing about anyone else getting a lawyer for him."

In *People v. Gray*, 33 Ill.2d 349, 211 N.E.2d 369, cited in *MacArthur*, the defendant did not seek to retain counsel of his own choice, but, rather, desired to choose from among available appointed counsel. In both *MacArthur* and *Gray*, defendants appeared to be engaging in dilatory tactics in trials which were about to begin. The findings in both those cases are consistent with the rule of law stated in *Payne* and *Green*, and, considered together, they hold that, while the right to counsel of one's own choice must be balanced against any attempts to impede the administration of justice, the right, nonetheless, remains inviolate.

Here we are concerned with the question as to whether this right should be extended to the preliminary hearing stage. We note that the purpose of a preliminary hearing is to ascertain whether there is probable cause to believe the crime charged has been committed and, if so, whether there is probable cause to believe that it was committed by the accused (Ill. Rev. Stat. 1969, ch. 38, par. 109—3(a); *People v. Bonner*,

*supra*) and that preliminary hearing findings are not binding on the Grand Jury. *People v. Morris*, 30 Ill.2d 406, 197 N.E.2d 433.

Here the record discloses that a Grand Jury indictment, based upon an independent finding of probable cause, was returned against defendant less than one month after the preliminary hearing. We observe also that the attorney defendant's mother said he was supposed to have, had no appearance on file at the time of the preliminary hearing which was two months and one continuance after defendant's arrest, indicating the possibility that defendant was attempting to forestall the expeditious handling of this preliminary proceeding. In addition, no specific instances were pointed out showing the manner in which defendant was prejudiced at trial as a result of what occurred at the preliminary hearing; in this regard he simply asserts:

> "A close scrutiny of that part of the record pertaining to the preliminary hearing will reveal unmistakably that counsel for the codefendant did not display the interest or zeal to discover weaknesses in the State's case or to develop impeachment tools for use in cross-examination of the State's witnesses."

■■ We do not accept this criticism, as our review of the record reveals that defendant's counsel repeatedly referred to and used preliminary hearing testimony for purposes of impeachment at trial. Furthermore, defendant gave no indication as to how other counsel would have differed in his representation at the preliminary hearing. Nor did defendant make a showing of any conflict of interest between himself and codefendant's attorney which would have resulted in a contrary finding if he had been represented by other counsel. The right to counsel does not require the appointment of an individual attorney to represent each defendant, where there are multiple defendants, if there is no showing that conflicts of interest can be anticipated. *People v. Robinson*, 42 Ill.2d 371, 247 N.E.2d 898, *cert. denied*, 396 U.S. 946, 90 S.Ct. 385, 24 L.E.2d 248.

■■ In *Coleman*, the conviction was not reversed but vacated and remanded for a determination of whether denial of counsel constituted harmless error. The test for harmlessness is whether the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.E.2d 705.) In this light we have examined the record and we conclude that, while denial of counsel of one's choice at a preliminary hearing may be error, under the circumstances set forth herein, it was harmless error.

Defendant also contends he was denied due process of law because of a preindictment confrontation which he argues, was so unnecessarily

suggestive and conducive to irreparable mistaken identification that it tainted the in-court identification.

He points out that within hours of the commission of the crime the Porters were asked by the police to view a suspect at the police station. Defendant was alone in a room at the station and, after observing him through a one-way mirror, the Porters identified him as one of the perpetrators of the crime. There is indication that the police informed the Porters prior to this identification that they had "one of the boys in custody" and there is conflicting testimony as to whether the Porters were told before or after the confrontation that defendant was in possession of the stolen check.

In *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1206, it was stated:

'The practice of showing suspects singly to persons for the purpose of identification, and not as part of a line-up, has been widely condemned. However, a claimed violation of due process of law in the conduct of the confrontation depends on the totality of the circumstances surrounding it, * * *."

See also, *People v. Blumenshine,* 42 Ill.2d 508, 250 N.E.2d 152, cited by defendant, where at page 512 the court said:

"Not every viewing of a suspect or suspects alone will be considered a denial of due process, for there may be justifying or saving circumstances * * * (2) *People v. Speck,* 41 Ill.2d 177, 193, where a principal factor was that it was apparent the identifying witness had an excellent opportunity to observe the defendant at the time of the crime."

Here the Porters had this opportunity. The robbery occurred during daylight hours in a well lighted store. Moreover, the robbery itself lasted for a number of minutes and afforded both victims, Mrs. Porter in particular since defendant had grabbed her arm, the opportunity to closely observe him. She was positive in her testimony concerning the identification of defendant at the police station and at trial. It was stated in *People v. Patrick,* 53 Ill.2d 201, 206, 290 N.E.2d 227:

"To say that the pretrial identification confrontation was improperly and unnecessarily suggestive does not, however, require a holding that the trial court erred in permitting the witness to make an in-court identification of the defendant. Such an identification is permissible despite a tainting pretrial confrontation if it has an origin independent of the tainted pretrial identification."

■■ Without passing on the extent of the suggestiveness indicated in the original confrontation, we believe that the in-court identification, based

upon the totality of the circumstances, had reliable, prior independent origin.

Therefore, consistent with the foregoing considerations, we conclude that defendant was not deprived of due process of law.

Defendant also contends there was reasonable doubt of defendant's identification as one of the perpetrators of the crime charged because, he argues, Mr. and Mrs. Porter did not identify defendant at the police station confrontation.

From our examination of the record it appears that, although Mr. Porter testified "he was not able to thoroughly identify defendant" at the original police confrontation within hours after the crime, he did state he saw and identified defendant a few days later at the station and identified him at trial. The record also discloses that Mrs. Porter identified defendant at trial and testified that she had identified him at the original pretrial confrontation. Defendant, however, argues that she could not identify him at the preliminary hearing where, in answer to the court's question "neither one are able to identify Herman Jackson, is that right", Mrs. Porter answered "not from seeing him, no". She denied that answer and further denied that she had stated at any time that she could not identify defendant.

■■ Although the rule is that a conviction of crime must be supported by proof beyond a reasonable doubt that the accused is the person who committed it (*People v. Cullotta*, 32 Ill.2d 502, 207 N.E.2d 444), we cannot say, on the record here, that there is reasonable doubt that defendant is the person who committed the crime charged here.

Accordingly, for the reasons stated, the judgment is affirmed

Affirmed.

DRUCKER, P. J., and ENGLISH, J., concur.