THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES CROTTY *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 62354, 62445 cons.

Opinion filed December 2, 1976.

Victoria J. Meyers, of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendants, James Crotty and Walter Racinowski, were indicted for the offense of armed robbery (Ill. Rev. Stat. 1969, ch. 38, par. 18—2). Crotty was also indicted for the offense of unlawful use of weapons (Ill. Rev. Stat. 1969, ch. 38, par. 24—1(a-4). Both defendants were tried together, and a jury found them guilty on all counts. Racinowski was sentenced to a term of 10 to 30 years for armed robbery, and to a term of 3 to 9 years for unlawful use of weapons, the sentences to run concurrently. Defendants brought separate appeals which have been consolidated for review. They contend that the identification testimony at

trial was so vague, doubtful and uncertain as to be insufficient to establish guilt beyond a reasonable doubt; that references made at trial to Crotty's arrest for a second unrelated robbery were prejudicial error denying both defendants a fair trial; and that the admission into evidence of live ammunition recovered from Racinowski more than a month after the offense constituted prejudicial error.

We affirm. The pertinent facts follow.

At about 8 p.m. on November 29, 1971, two men entered the Breakers Motel in Chicago and forced the desk clerk at gunpoint to give them the motel's cash. The clerk, David Anderson, was the principal witness for the State at trial, and testified as follows. On the night of the incident he was seated behind the desk counter reading when a man appeared in front of him and asked for the motel's money. At trial Anderson identified the man as defendant Crotty. Crotty pointed a gun at him and Anderson started to get the money out of the cash drawer. As he was counting the money a second man entered and stood at the end of the counter. This man (whom Anderson identified at trial as defendant Racinowski) also pointed a gun at him. At this point Crotty was about a foot and a half away from Anderson and Racinowski was about five feet away. Crotty told Anderson to hurry and Racinowski shook his gun at Anderson. Anderson took his time in placing the money on the counter in order to get a good look at the men who left together by the same door they had entered six or eight minutes earlier. The lighting in the motel lobby was good. Anderson waited about three minutes, then called the police who arrived within 10 or 15 minutes. Anderson further testified that he identified Crotty in a lineup and viewed a second lineup where he identified Racinowski. The revolver taken from Crotty at his arrest was shown to Anderson who recognized it to be like the gun held by Crotty during the robbery.

On cross-examination Anderson testified that he had concentrated on the men's faces and their weapons so that he could later identify them. The second man to enter did not wear a hat or gloves. Anderson described him to the police on the night of the robbery as 5 feet 5 inches tall, weight 140 pounds, and a ruddy complexion. Anderson further testified on cross-examination that he could not reach the cash drawer without getting up from his seat, but if the transcript of the preliminary hearing held two and a half years before stated that he never rose from his seat, he must have said that at the time.

Officer Clark testified to the arrest of Crotty. At about 10:30 p.m. on December 28, 1971, he received a radio communication with a description. He and his partner then started to the Breakers Motel and en route they saw a man fitting the description they had received. When they stopped him the man's hand was in his right coat pocket and a revolver

was found there. Clark identified Crotty as the man they stopped. The weapon was loaded, and at trial the gun and live shells were identified by the officer as those recovered from Crotty.

Officer Kelly testified to the arrest of Racinowski. Pursuant to his assignment to a robbery investigation he went to Racinowski's home where he arrested and searched the suspect. Three live bullets were recovered.

Officer Sihocky, the investigating officer of the November 29 robbery, testified that the complaining witness Anderson had stated on the night in question that the first man to enter stood at the counter and the second man stayed at the door. The officer estimated that the door was 5 or 6 feet from the counter. He also testified that Anderson described the second man as having a pale complexion and weighing about 170 pounds. Sihocky stated that the first offender was described that night by Anderson as having a ruddy complexion.

Eugene Racinowski, brother of the defendant, testified that Walter Racinowski had tattoos between the knuckles of both hands; they were dark blue and spelled "Love Mary."

## I.

■■ Defendants argue that they were not proved guilty beyond a reasonable doubt because the identification testimony of Anderson was doubtful and uncertain, containing serious discrepancies. It is the function of the jury to weigh testimony, judge credibility of witnesses and determine factual matters, and a reviewing court will not disturb the jury's determination unless it is so unsatisfactory as to raise a reasonable doubt of defendants' guilt. (*People v. Peto* (1967), 38 Ill. 2d 45, 230 N.E.2d 236.) The testimony of one credible witness is sufficient to convict. (*People v. Mikka* (1955), 7 Ill. 2d 454, 131 N.E.2d 79.) It is not necessary for a witness to give a precise and accurate description of a defendant's facial characteristics; however, the trier of fact, in evaluating the reliability and credibility of an identification, must consider the failure of a witness to observe and report a clearly visible feature. *People v. Henderson* (1971), 133 Ill. App. 2d 336, 273 N.E.2d 244.

In this respect defendants first argue that Anderson stated that while they were in his presence he was not only looking at their faces but at their guns as well, and that he was also counting money at the same time; further, that the men were positioned so that he could not look at them simultaneously. We find that it was for the jury as the finders of fact to determine Anderson's credibility. Here, Anderson testified that the robbery took six to eight minutes and occurred in a well-lit lobby. The fact that he could not see them both at the same time does not mean that he was not able to adequately observe each one to make positive

identifications. He also positively identified both defendants in pretrial lineups. We find that a jury could have reasonably found that Anderson identified defendants sufficiently to support his testimony.

■■ Defendants also state that Anderson's testimony is undermined by discrepancies in the descriptions he gave at the time of the incident, at the time of trial, and as compared with defendants' actual appearance. Racinowski contends that he has blue tattoos between his knuckles and that such markings would have been noticeable on a hand holding a gun in a well-lighted area. Anderson, however, testified that the second man to enter, whom he later identified as Racinowski, bore no unusual characteristics and that he wore no gloves. He also testified at trial that he described the second man to officers as a man in his late 40's or early 50's, 5 feet 5 inches tall, 140 pounds, with a ruddy complexion. Officer Sihocky, the investigating officer, testified that on the night of the incident Anderson described the second man as 5 feet 5 inches tall, 170 pounds, and having a pale complexion. The evidence clearly shows that Anderson observed the men alternately for a period of six to eight minutes in a well-lit lobby. We note that three years had passed from the time of the robbery to the time of trial, and further, that all of these discrepancies were argued before the jury and were before them during their deliberations. In light of the positive nature of Anderson's identification, we cannot say that the testimony was so doubtful and uncertain as to raise a reasonable doubt of guilt.

■■ Defendants further assert that there is doubt as to Anderson's ability to recall the incident accurately in that at trial he stated he could not reach the cash drawer without getting up from his sitting position; yet at the preliminary hearing he testified that he never left his seat. Defendants also argue that at trial Anderson testified that the second man to enter stood at the end of the counter, whereas Officer Sihocky stated that Anderson had told him on the night of the incident that the second man stayed at the door. Again, we note that three years had passed between the night of the robbery and the trial, and that the preliminary hearing took place two years before trial. We find that the discrepancies argued by defendants were minor in nature and do not amount to reversible error in light of the positive identifications made by the complaining witness. We conclude that defendants were proved guilty beyond a reasonable doubt.

## II.

Defendants contend that they were both denied a fair trial because of the improper reference made at trial to Crotty's involvement in another armed robbery occurring a month later at the same premises. In his opening statement the Assistant State's Attorney said:

"The evidence as to the arrest of Crotty will indicate that on December 28, 1971, almost a month after the date of the armed robbery, the police officers had occasion to receive a radio communication regarding once again the Breakers Motel. They responded to that radio communication and somewhere near the Breakers Motel they arrested Mr. Crotty.

Mr. Anderson will * * * tell you that on the 28th day of December he was not working that particular shift at the time Mr. Crotty was arrested, and it was Mr. Niksich who was working there at the time.

Keep in mind those two dates. The date of our armed robbery we are proceeding on occurred November 29, and involves David Anderson. Mr. Crotty was arrested on December 28th. That is the night that Mr. Niksich was working at the Breakers Motel. He was arrested near the Breakers Motel."

This statement was not objected to. Thereafter, during direct examination of the complaining witness Anderson, the following colloquy occurred:

"Q [State's Attorney]: Mr. Anderson, calling your attention to December 28, 1971, did you have occasion to work at the Breakers Motel on that evening?

A: No. John Niksich was there that evening.

Q: And what if anything unusual occurred that evening?

A: He was held up.

MR. MENAKER [counsel for Racinowski]: Objection.

THE COURT: Sustained.

MR. MENAKER: And ask the answer be stricken.

THE COURT: Sustained. The answer is stricken, and the jury is instructed to disregard that."

Finally, Officer Clark testified that on December 28, 1971, at about 10:30 p.m. he received a radio communication with "a description." During the side bar conference which followed the objection to this testimony, defense counsel argued that "due to the opening statement I believe he is going to say that the unusual thing occurring was he received a radio call of an armed robbery." The Assistant State's Attorney said that no mention of a subsequent armed robbery would be made, and Officer Clark continued in his testimony which included the statement that "we observed a man fitting the description in the radio communication." During cross-examination counsel for Crotty elicited from Officer Clark the contents of the description which he received over the radio prior to Crotty's arrest. In redirect examination, over defense counsel's objection, Officer Clark testified that the description came "from the police officer investigating at the scene," and that it originated from "Mr. Niksich the original victim at the motel." Defense counsel moved for a mistrial, and

during a side bar conference the Assistant State's Attorney agreed to move to strike the witness' testimony as to the source of the description. The jury was then instructed to disregard "that portion of the witness' answer relating to, from whom the description came."

■■ These assertions made with respect to the events of December 28 concern the activity of Crotty only. Although Crotty's arrest is thus shown, the remarks made in conjunction therewith contain such reference to his possible involvement in another crime that the jury was properly instructed to disregard the reference. However desirable it is that defendant's subsequent involvement not have been suggested to the jury, the trial need not be perfect provided a fair trial has been had. Even where error has been committed at trial by improperly admitting evidence of another crime, a conviction will not be reversed unless it appears that real justice has been denied or that a jury verdict may have resulted from such error. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347; *People v. Dickman* (1969), 117 Ill. App. 2d 436, 253 N.E.2d 546.) In the instant case the competent evidence of the complaining eyewitness establishes the guilt of both defendants beyond a reasonable doubt, and we are satisfied that a just result has been reached at trial.

### III.

■■ Finally, Racinowski contends that evidence of live ammunition recovered from his person more than a month after the offense was irrelevant, and that its admission into evidence constituted prejudicial error. The police officer searching Racinowski upon his arrest found three live bullets in his shirt pocket, and Racinowski argues that at most, all that this evidence shows is his propensity to carry ammunition. Before the trial, defense counsel had filed a motion *in limine* seeking to exclude this evidence on the grounds that it was irrelevant to the issues being tried and highly prejudicial to defendant. Without giving reasons for doing so the trial court denied the motion *in limine*. We agree that these bullets are irrelevant to the issues being tried and that their admission into evidence was improper. However, an error in admitting such evidence will be deemed harmless if a reviewing court can determine that it is harmless beyond a reasonable doubt. (See *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Jackson* (1973), 15 Ill. App. 3d 761, 305 N.E.2d 223.) Therefore, we will look at the entire record to determine if evidence improperly admitted could reasonably have affected the verdict and will affirm if a different verdict could not have been reached had the evidence not been admitted. (*People v. Wilkes* (1971), 2 Ill. App. 3d 626, 276 N.E.2d 761.) An examination of the entire record in the instant case discloses that while the admission of the bullets into evidence may have been error, it was harmless error in light of

Anderson's eyewitness testimony which we have found establishes Racinowski's guilt beyond a reasonable doubt. See *People v. Tucker* (1971), 3 Ill. App. 3d 273, 278 N.E.2d 141.

IV.

For the foregoing reasons the convictions of both James Crotty and Walter Racinowski are affirmed.

Affirmed.

DEMPSEY and McNAMARA, JJ., concur.