THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANGLIA BOONE, Defendant-Appellant.

Third District   No. 77-209

Opinion filed December 15, 1977.

Howard V. Thomas, of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong and Robert M. Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:
This is an appeal by defendant Anglia Boone from a conviction of theft in the Circuit Court of Peoria County following a jury trial. Defendant was sentenced to a term of 1 to 1½ years imprisonment to be served consecutively to a sentence previously imposed upon defendant. On

appeal, defendant contends (1) that the State failed to properly prove the corporate existence of the business victimized by the theft involved as alleged in the indictment, (2) that defendant was denied a fair trial as a result of a witness testifying that he recognized defendant from "prior engagements," (3) that defendant was denied a fair trial as a result of a State's witness testimony, on cross-examination, that a prospective defense witness had been previously tried as a lookout in the same alleged incident, (4) that the trial court erred in refusing a jury instruction tendered by defendant pertaining to an allegedly prior inconsistent statement by a State's witness, and (5) that the sentence imposed by the trial court was excessive and the result of consideration of improper matters.

Defendant Anglia Boone was charged by indictment with the commission, on June 26, 1976, of the offense of theft of property having a value less than $150, by knowingly exerting unauthorized control over a pair of pants, the property of Foxmoor Casuals, Inc., a corporation. The indictment further alleged that defendant had previously been convicted of the offense of theft.

The record shows that at the trial, the first State witness was Susan Callahan, a salesclerk at Foxmoor Casuals on the date of the alleged incident. She testified that she observed defendant enter the store and put a pair of gaucho pants in her purse, and then leave the store with John Rogers. Callahan followed defendant and Rogers into another store, where Callahan saw defendant place the gaucho pants in a drawer. On direct examination Callahan replied affirmatively to the question: "And on June 26, 1976, were you employed by Foxmoor Casuals, Inc., a corporation?" On cross-examination, defendant's counsel questioned Callahan and asked how she knew that Foxmoor Casuals was a corporation? She replied: "Because at the last hearing that we had it was brought out to me and was made aware that it was a corporation." The questioning then continued as follows:

"Q. What do you mean 'at the last hearing'?

A. At John Roger's hearing.

Q. What happened at John Roger's hearing?

A. He was a look-out for her, and they had established this fact at the time, also whether it was a corporation or not.

Q. Well, did someone tell you that it was Foxmoor Casual, Inc.? You said you found that out at the last hearing.

A. That's correct.

Q. Well, then, who told you that?

A. The Judge.

Q. The Judge told you that the name of the store was Foxmoor Casual, Inc.?

A. What I understand that the Judge said was, to be a store in this state, it has to be a corporation.

Q. Now, you testified that John Rogers was with her, right?

A. That's correct.

Q. And you said that at the prior trial or at the prior hearing that there was something about him being a look-out?

A. Yes.

Q. With her?

A. Yes.

Q. Did you testify in that trial?

A. Yes, I did.

Q. What was the result of that trial?

A. He was found not guilty."

At the close of the cross-examination of Callahan, defense counsel moved for a mistrial on the ground that the witness had called Rogers, who was to be a primary defense witness, a "look-out" before the defense had presented its case. The trial court denied the motion.

Gerald Brink, a security guard at the store premises, also testified for the State and was cross-examined by defense counsel as to the chain of custody of the alleged stolen merchandise. The questions and answers continued as follows:

"Q. Do you have personal knowledge or know as to what Sue [Callahan] did with these pants after she found them at Carson's?

A. Yes.

Q. What?

A. Sue gave them immediately to Corporal Mauschbaugh, who, in turn, like I said, brought them back down to the store. The chain of evidence was not broken. It was intact during the whole course from the time of arrest to the date of court here.

Q. If she gave them to the corporal, did he carry them around or what?

A. Let me say one thing. Foxmoor Casual is right immediately next to our security office. To get to our security office you've got to pass Foxmoor Casual. So to save steps and to eliminate a lot of extra hassle and work, we took the two down there for positive identification. Upon seeing both suspects at the time of stopping, I recognized both from previous engagements."

Following this cross-examination of the witness, defense counsel moved for mistrial on the ground of the witness' remark concerning "previous engagements". Defendant's motion for mistrial at this time was denied where the issue of the reference to "previous engagements" was raised in the motion.

Defendant testified that she had met Sharon Ford at the shopping mall

and that Ford had given defendant the gaucho pants. Defendant testified that she put the pants into her purse, and in the course of shopping entered the Foxmoor Casuals store. She stated that while she was in the store she opened her purse to get a cigaret for John Rogers and pulled the pants out of her purse while looking for the cigarets. Defendant testified that after leaving the store she noticed that she was being followed by Callahan, and became apprehensive that Ford may have stolen the pants, and then disposed of the pants.

Sharon Ford testified and corroborated the testimony of defendant and stated that she had purchased the pants at Foxmoor Casuals and presented a sales slip received at the time of the purchase. Irene Cooper and John Rogers also testified for the defense, and supported the testimony of defendant. Rogers also testified at his trial, regarding the same incident, and said that at that trial, Callahan did not state that defendant placed the pair of pants in her purse while in the store.

Following defense testimony, the State called the manager of Foxmoor Casuals store as a witness and she testified, without objection by the defendant, that she was employed by "Foxmoor Casuals, Inc., a division of Melville Shoe Corporation".

The jury found defendant guilty of having stolen property of a value less than $150. At the conclusion of the sentencing hearing, the trial court sentenced defendant to a term of from 1 to 1½ years imprisonment, to be served consecutively to a sentence previously imposed upon defendant for a theft conviction.

■■■ The first contention made by defendant on appeal is that the State failed to properly prove the corporate existence of Foxmoor Casuals, Inc. While, from early cases, if ownership of property was alleged to be in a corporation, the legal existence of a corporation became a material fact to be proven on the basis that a defendant is required to be informed of the charges against him or her to protect the defendant from possible double jeopardy. As the court in *People v. Sims* (1st Dist. 1975), 29 Ill. App. 3d 815, 817, 331 N.E.2d 178, stated:

> "However, the prescriptions formerly associated with proof of a corporation's existence are no longer required. In *People v. McGuire* (1966), 35 Ill. 2d 219, 220 N.E.2d 447, the court dispensed with the need to introduce into evidence the corporation's charter in order to establish that there was a corporation. This time-honored method of proof was dismissed as a ritualistic concern with empty formalities. The court held that the corporate existence could be proven by the direct oral testimony of a person with knowledge of that fact. There have been further relaxations."

In the instant case, both Callahan, a store employee, and the store manager testified orally to the corporate existence of Foxmoor Casuals,

Inc. While Callahan was cross-examined as to the basis of her knowledge, the manager, who presumably would be in better position to know of the corporate existence, was not questioned concerning the basis of her knowledge. She did testify that Foxmoor Casuals was a corporation. It is noted that defendant does not argue on appeal that the corporate entity does not exist. We conclude that sufficient evidence of corporate existence was presented to allow the jury to determine the fact of corporate existence.

Defendant next argues that she was denied a fair trial by the remarks of the security guard, made during examination by defense counsel, to the effect that he recognized defendant from "previous engagements." Defendant argues that such remark indicated that defendant had a propensity for crime and also impeached the testimony of defendant and Rogers prior to the giving of that testimony. As stated in *People v. Henenberg* (2d Dist. 1976), 37 Ill. App. 3d 464, 468, 346 N.E.2d 11:

> "Generally, evidence of other offenses may be admissible if relevant for any purpose other than to show a mere propensity on the part of the defendant to commit the crime charged. [Citation.] We have held that the actual need for the evidence, even though relevant, must be considered in the light of the issues and the other evidence available to the prosecution and must be balanced against the prejudicial effect of its admission upon the jury. [Citation.] Even though the testimony does not charge the defendant directly with the commission of another crime, it may also be error to admit evidence which suggests prior unspecified criminality of the defendant. [Citations.]"

■■ It is noted that the reference to "previous engagements" by the security guard does not charge specific criminality by defendant, and does not necessarily refer in any way to criminal conduct by defendant. We note further that the alleged prejudicial remarks were made during examination by defense counsel. Counsel for the defendant had been questioning the security guard with regard to the chain of custody of the merchandise stolen from the store, and the security guard, in response to that line of questioning, related the occurrences immediately following defendant's arrest. In relating those events, the security guard explained the reason for not going directly to the security office for further investigation, by stating that he recognized defendant and Rogers from "previous engagements." We conclude from the record that the remarks were not so suggestive of prior criminality as to be inadmissible, and conclude that the trial court properly denied defendant's motion for mistrial on the basis of such remarks.

■■ Defendant also argues that she was denied a fair trial as a result of testimony by Callahan, on cross-examination, that John Rogers (a

prospective defense witness) had been previously tried for his participation in the alleged theft. We note that Callahan, in responding to a question by defense counsel, made reference to a prior hearing, and that defense counsel himself then elicited that Callahan was referring to John Roger's trial and that Rogers had been on trial for being a look-out in the same incident as alleged against defendant, and that Rogers had been found not guilty at that trial. Following his cross-examination of Callahan, defense counsel moved for a mistrial on the ground of the reference to the prior trial of Rogers, a prospective defense witness. We note that the Illinois Supreme Court, in *People v. George* (1971), 49 Ill. 2d 372, 379, 274 N.E.2d 26, stated:

> "It is reasonable to say that a defendant may not interject an issue into his case and then contend that the bringing of it to the attention of the jury was erroneous. This court in a situation resembling the one here said in *People v. Halteman*, 10 Ill. 2d 74, 83: 'Obviously the defendant cannot now be heard to complain of evidence of other offenses committed by the defendant with children other than complaining witness, when such testimony was brought out by defendant upon cross-examination in the first instance.' "

In the instant case, Callahan, on cross-examination, made reference to the "last hearing." Defense counsel then proceeded to question Callahan in some detail about that hearing. Under such circumstances, we conclude that defendant invited the error, if any, in the admission of Callahan's remarks, and that defendant may not now complain of that testimony.

We note, additionally, as stated in *People v. Crotty* (1st Dist. 1976), 44 Ill. App. 3d 413, 419, 357 N.E.2d 1360:

> "However, an error in admitting such evidence will be deemed harmless if a reviewing court can determine that it is harmless beyond a reasonable doubt. [Citations.] Therefore, we will look at the entire record to determine if evidence improperly admitted could reasonably have affected the verdict and will affirm if a different verdict could not have been reached had the evidence not been admitted. [Citation.]"

In the instant case, Rogers, when called as a defense witness, testified that he had been tried for his participation in the same incident as alleged against defendant in this action, and that Callahan testified at that trial. We conclude, therefore, that admission of Callahan's testimony regarding the previous trial was, if considered to be erroneous, harmless beyond a reasonable doubt, in view of the record made in this case.

■■ Defendant additionally argues that the trial court erred in refusing a jury instruction tendered by defendant, concerning an alleged prior inconsistent statement made by State's witness Callahan. Callahan

testified at the instant trial that during Rogers' trial she had stated that defendant Boone put the pants in her purse, while Rogers testified at the instant trial that at the Rogers' trial Callahan did not testify that defendant Boone had put the pants in her purse. Apparently there was no transcript made of the Rogers' trial. Defendant's tendered instruction, refused by the trial court, stated:

"Evidence that on former occasion a witness failed to make a statement consistent with her testimony in this case, may be considered by you in deciding the weight to be given to the testimony in this case."

The court was willing to give IPI Criminal No. 3.11 in its standard form, which was as follows:

"Evidence that on some former occasion a witness [made a statement—acted in a manner] inconsistent with his testimony in this case, may be considered by you in deciding the weight to be given to the testimony of that witness."

The Illinois Supreme Court in *People v. Owens* (1976), 65 Ill. 2d 83, 92, 357 N.E.2d 465, stated:

"The rule is that the omission of a witness to state a particular fact under circumstances rendering it incumbent upon him to, or likely that he would, state such fact, if true, may be shown to discredit his testimony as to such fact."

The defendant's tendered instruction here did not properly reflect the rule as set forth in *Owens*, and in light of the fact that Callahan's prior remarks were made at the trial of Rogers (and therefore focused necessarily on Rogers), defendant did not show that it would have been incumbent on Callahan to refer to defendant Boone putting the pants in her purse, while Callahan was testifying at Rogers' trial. We find no reversible error in the refusal of the instruction referred to.

■■ Defendant finally argues that the sentence imposed by the trial court of 1 to 1½ years imprisonment, to be served consecutively to a sentence previously imposed upon defendant, was excessive and the result of consideration of improper matters. We have noted that imposition of a sentence is a matter of judicial discretion and the sentence imposed by the trial court should not be changed by a reviewing court unless it is apparent that the judge abused his discretion (*People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161). The sentence imposed upon defendant is within the permissible range of from 1 to 3 years as authorized by statute. The trial court, in sentencing defendant, stated:

"Mrs. Boone, you do present to the court a rather difficult problem because of your large family and also large number of prior shoplifting convictions, but this court finds that due to the nature and circumstances of the offense and history and character of the

defendant, particularly where at the time of this offense you were on probation for a prior theft in 1974, and also on appeal from a theft that occurred 3 years before and with 3 similar theft offenses in the early 60's, one of which included a sentence to Dwight. Under the circumstances the court believes that in order to protect the public from further activity on your part, a consecutive sentence is required * * *."

The trial court went on to state that other aggravating factors, in its opinion, were that the incident appeared to involve professional shoplifting, and that defendant's evidence presented at trial appeared to include perjured testimony. Defendant argues that the trial court's remark concerning the possibility of perjured testimony was an improper matter to be considered by the trial court. We note that it is clear that the trial court in imposing sentence on defendant for the instant theft conviction, could not punish defendant for perjury possibly committed at the instant trial, and that the trial court could consider only the evidence presented at the trial, and the reliability thereof, as a factor in determining defendant's rehabilitative potential. We conclude that we do not believe that the record shows that the court considered anything other than defendant's record as actually made, and the evidence in this trial, in sentencing defendant in this cause.

For the reasons stated, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STENGEL, P. J., and BARRY, J., concur.