(No. 41085.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN W. WILLIAMS, JR., Appellant.

*Opinion filed September 24, 1968.*

Samuel L. Dean, Jr., appellant.

William G. Clark, Attorney General, of Springfield, and William R. Nash, State's Attorney, of Rockford, (Fred G. Leach, Assistant Attorney General, and William H. Snively, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

In a trial by jury in the circuit court in Winnebago County, John W. Williams, Jr., an 18-year-old defendant, was convicted of the murders of two teenage boys and sentenced to concurrent terms of not less than 90 years and not more than 100 years on each murder.

The murders occurred sometime between 7:15 and 8:00 o'clock in the evening of March 2, 1967, and were brought to the attention of the police by a telephone call at 8:16 P.M. from an unidentified person stating that two persons had been shot and murdered at the pavilion in Levings Park in Rockford. The two 14-year-old cousins, Ronald Johnson and Wayne Mullendore, were found unconscious and dying. Each boy had been shot twice, once behind the right ear and once in the abdomen. On March 6 the defendant was arrested and on June 28, after a three-day trial, the guilty verdicts were returned.

On appeal defendant contends that the evidence against him was wholly circumstantial and insufficient to establish his guilt; that the jury was not properly and fully instructed on the law of circumstantial evidence; and that the remarks of the State's Attorney in his opening and closing statements were so highly prejudicial that he was denied a fair trial; that the trial court committed reversible error in denying him a change of venue on the basis of alleged inflammatory and prejudicial pretrial publicity; and finally that certain search warrants were issued without probable cause or the required specificity and were therefore invalid and their fruits should have been suppressed.

Defendant chose to exercise his right not to testify and no other evidence was offered in his behalf. However, it is not contradicted that on March 1, the day before the murders, defendant and his father purchased a .22 caliber RG 24 Rohm revolver from a gun dealer in Rockford, that it was bought for defendant and that he carried it to his home on that day. Two teenage friends of defendant testified that on the same evening defendant was carrying this gun, that it was loaded and that defendant stated to them that he felt like shooting someone, that it might be a particularly named individual, or just anyone, or some "white sonofabitch for doing him wrong or something". He also told them he was just waiting for someone "to mess with him and he was going to bust a cap on them". He further told them that he had practiced shooting into the railroad embankment immediately behind and abutting on the property where he lived.

Subsequent evidence brings this testimony into sharp focus. Though the State was unable to produce defendant's gun at the trial, the owner of the gun store who sold defendant his gun had another identical gun in stock with a serial number one digit different from defendant's. Using this gun as a model it was determined by a ballistics expert that the two bullets recovered from the abdomens of the boys had

the same class characteristics as bullets fired from the sample gun though the individual characteristics differed. He stated that all guns of the same make and caliber have such class characteristics but that only the individual characteristics are determinative in matching bullets to the gun from which they have been fired. He could therefore conclude only that the bullets fired into the boys came from a gun similar to the sample gun he tested. He was then asked about certain .22 caliber bullets and shell cases found by the police in the railroad embankment behind defendant's house. He stated that three of these bullets had the same individual characteristics as the bullets recovered from the boys' abdomens and were definitely fired from the same .22 caliber murder weapon. He also found that ten of the .22 caliber shell casings recovered from the same area had been fired from a weapon with the same class characteristics as the sample RG 24 Rohm revolver, but that their individual characteristics were not the same and the specific identity of the gun from which they were fired could not be determined. In addition, he stated that two of the shell casings so found had been fired from an Ithica rifle which had been introduced into evidence and identified as belonging to defendant.

To tie in this evidence with the whereabouts of defendant on the night of the murder, testimony was introduced that a brother of one of the victims had accompanied them to a neighborhood supermarket at 7:00 P.M. where they had exchanged some soda bottles for cash; that they had returned to the Johnson home at 7:15 o'clock and had left immediately to visit a girl friend who was baby sitting in a nearby house; that this was the last time they were seen alive. Two witnesses stated that they had seen defendant in the same grocery store at the same time the boys were there and at the trial they identified the turban he was then wearing. Two other witnesses testified they saw defendant between 8:00 and 8:15 P.M. on the night of the murders

running towards his house less than a block away. Another witness stated that at about 8:30 that same night defendant joined a group of boys gathered outside a restaurant in the same neighborhood and that they talked for a few minutes.

Other evidence brought out on cross-examination of the State's witnesses revealed that many of defendant's teenage friends carried .22 caliber, pearl handled guns similar to defendant's; that on one occasion two other boys had been at the railroad tracks with defendant; that the shell casings and slugs introduced in evidence had not been found until four and eleven days after the murders; and that during the previous year the same gun store that sold defendant his gun had sold perhaps fifty .22 caliber Rohm revolvers, two or three of which were Rohm RG 24's.

Without reiterating all of the facts, we find that defendant's contention that the evidence against him was wholly circumstantial and insufficient to establish his guilt is without merit. A conviction can be sustained upon circumstantial evidence as well as upon direct, and to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. (*People* v. *Russell,* 17 Ill.2d 328.) Nor will this court reverse a judgment of conviction unless the evidence is so palpably contrary to the verdict, or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt. (*People* v. *Lobb,* 17 Ill.2d 287.) In the absence of substantial trial error we are satisfied that the evidence here establishes the guilt of defendant beyond a reasonable doubt, and we now proceed to a discussion of such alleged errors.

It is apparent that the key to the State's case is the murder weapon and its connection with defendant. In his opening statement the prosecutor stated, "The evidence in this case will show further that the gun purchased on March 1st, has never been found and has never been produced or brought forward by this defendant." In his clos-

ing statement after a lengthy review of the evideice concerning the gun and the ballistics testimony with reference to the spent bullets and methods of identifying them, the prosecutor argued: "I don't believe for a second that this man's gun will ever turn up. It can't. He can't afford to have that gun ever turn up. And we all know why he can't do that. We know why it hasn't turned up. We know why Mr. Nical (ballistics expert) has not been allowed to look at it to compare slugs fired from it with slugs in these plastic bags before you."

Defendant contends that these statements were highly prejudicial to him, that they jeopardized his presumption of innocence, that they constituted a denial of his Federal and State constitutional guarantees against self-incrimination and were in violation of the provisions of the statute prohibiting any reference or comment on his failure to testify. Ill. Rev. Stat. 1967, chap. 38, par. 155—1.

A careful analysis of the privilege and the reason for the prohibition reveals that their purpose is to prevent prejudice to an accused from his failure to testify, but *not* to prevent prejudice to his case from his failure to produce evidence to establish his defense. In *Schmerber* v. *California,* 384 U.S. 770, 16 L. Ed. 2d 908, 86 S. Ct. 1826, it was held that a blood test was admissible, the court stating that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. (See, *People* v. *Mulack, ante,* p. 429, filed this term.) In *Holt* v. *United States,* 218 U.S. 245, 54 L. Ed. 1021, 31 S. Ct. 2, it was contended that compelling the accused to model a blouse violated his privilege against self-incrimination. Mr. Justice Holmes, speaking for the court, rejected the argument as "based on an extravagant extension of the Fifth Amendment", and went on to say, "the prohibition of compelling a man in a criminal court to be a witness against himself is the prohibition of the use of physical or

moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." And Wigmore states that the privilege is limited to testimonial disclosures, that it was directed at the employment of legal process to extract from the person's own lips an admission of guilt, which would take the place of other evidence. (8 Wigmore, Evidence, sec. 2236.) Thus, these authorities restrict the privilege to personal testimonial disclosures and not to the production of other physical evidence or evidence of other witnesses.

But a jury in its deliberations is not limited to a consideration of that which is, strictly speaking, testimony. To the contrary, it may properly consider any facts developed in the trial from which a reasonable inference may be drawn for or against either party. For instance, if it is developed in a trial that a witness exists, presumably under the control of a defendant, who can throw light upon a vital matter, and he is not produced, certainly a jury may fairly consider that fact, and, likewise, counsel would have a legitimate right to comment thereon. In *People* v. *Lion,* 10 Ill.2d 208, we held that a prosecutor's comment on the failure of defendant to call a hospital attendant to refute testimony as to his state of intoxication was proper. In *People* v. *Miller,* 278 Ill. 490, 511, counsel for the State argued to the effect that certain letters introduced in evidence and other features of the evidence had not been explained and that counsel had sought to evade and escape the plain issues in the case. He went on to argue: "What defense has been offered in answer to the State's case? Have you stopped to give that inquiry? I repeat, what defense has been made in this case?" To an objection that such remarks constituted a reference to the fact that defendant did not testify, the court held: "He [prosecutor] had a right to state that the defense had made no denial of certain facts that were proved by the State and to argue to the jury the full force of the facts proved by the State. Such statements and argu-

ment are not in violation of the statute prohibiting the prosecution from making reference to or commenting on the fact that the defendant did not testify." Also analogous is *People* v. *Sicks,* 299 Ill. 282, 286. Here, where one of the details of identification of the accused was a peculiar accent to his speech, an argument by the State's attorney that the evidence relative thereto stood unexplained and undenied was held not objectionable as a comment on the fact that accused did not testify. The prosecutor argued further that the defense did not enlighten the jury on this subject and the court held that this was legitimate argument, stating, "The State's attorney had a right to comment upon the failure of the defense to produce testimony to show the nationality of Sicks and to show that he did not speak with a peculiar accent, if such was the fact. This was one of the details of identification by the complaining witness, and we see no reason, supported by law or justice, why the State should not be permitted to comment on the fact that this piece of evidence stands in the record undenied and unexplained."

In the light of these cases it is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution. In the case before us there may have been some reason for failing to produce the gun in question, the gun which defendant had acquired the day before the murders and which by other evidence was so closely linked to the crime, but none was given and consequently defendant's nonproduction was a subject for consideration and also for comment. In other words, the rule may be stated that, in the absence of express prohibition, every fact which,

in no illegal manner, comes to the knowledge of the jury during the progress of a trial, and which may reasonably influence their judgment is a proper subject of comment in argument. Here, counsel simply called the jury's attention to the obvious fact that the gun was missing and he drew conclusions from such fact. The remarks were such as would naturally and reasonably occur to every man aware of the facts, whether on or off the jury and are not characteristic of, nor can hardly be compared with, the remarks condemned in *Griffin* v. *California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229. Defendant's voluntary failure to produce evidence in explanation or refutation may have prejudiced his case in the minds of the jury in that their consideration was limited only to the facts before them and the legitimate inferences to be drawn therefrom, but this did not prejudice the defendant regarding his failure to testify personally. Furthermore, the defendant failed to offer an instruction cautioning the jury that the defendant's failure to testify should be given no adverse effect.

We therefore find that the remarks of the State's Attorney herein were proper and within the bounds of legitimate argument.

Defendant next contends that the jury was inadequately instructed on the law of circumstantial evidence. However, the abstract does not contain all of the instructions and, as we have consistently held, error cannot be predicated upon the refusal of an instruction unless all of the instructions, both given and refused, are abstracted. (*People* v. *Robinson,* 27 Ill.2d 289; *People* v. *Allen,* 17 Ill.2d 55.) Actually, the circumstantial evidence instruction given on behalf of the State has previously been approved (*People* v. *Guido,* 321 Ill. 397), and this is not disputed by defendant. Defendant's principal objection arises out of the refusal of the court to give his tendered instruction which attempted to define the sufficiency of circumstantial evidence. The in-

struction was properly refused on the ground that it was argumentative and confusing. (*People* v. *Buskievich,* 330 Ill. 532.) Having made no further offer, defendant cannot now be heard to complain.

On the question of the search warrants we find that the complaints together with their supporting affidavits requesting the seizure of .22 caliber firearms, shells and shell casings, and blood stained wearing apparel were sufficiently specific under the facts, and the seizures made thereunder were legal. To hold otherwise would be to put a premium on hypertechnical detail as opposed to a realistic, common-sense approach to the constitutional requirements relative to search warrants, which approach we and the Federal courts have previously espoused. *People* v. *McGrain,* 38 Ill.2d 189; *United States* v. *Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741.

Finally, we find insufficient support in the record for defendant's contention that reversible error was committed in denying him a change of venue on the basis of alleged inflammatory and prejudicial pretrial publicity. The rule is that an accused is entitled to a change of venue when it appears there are reasonable grounds to believe that the prejudice alleged actually exists and that by reason of the prejudice there is a reasonable apprehension that the accused cannot receive a fair and impartial trial. (*People* v. *Meyers,* 381 Ill. 156; *People* v. *Berry,* 37 Ill.2d 329.) Here, we cannot say that the trial court had any reasonable grounds whatsoever to believe that defendant could not get a fair trial in Winnebago County, and this conclusion is supported by the fact that approximately three months after the crime and the arrest of defendant a jury was chosen within a period of one day from a panel of 49 examined, and defendant did not even exhaust his peremptory challenges. Jurors need not be totally ignorant of the facts and issues involved. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the

evidence presented in court. *Irvin* v. *Dowd*, 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639.

Having considered all of the assignments of error we are of the opinion that the evidence was sufficient to establish defendant's guilt and that he received a fair trial, free from prejudicial error. The judgment of the circuit court of Winnebago County is therefore affirmed.

*Judgment affirmed.*