(No. 47608.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. BOOKER BLAKES, Appellee.

*Opinion filed May 14, 1976.*

GOLDENHERSH, J., dissenting.

William J. Scott, Attorney General, of Springfield, and
Michael M. Mihm, State's Attorney, of Peoria (James B.
Zagel and Jayne A. Carr, Assistant Attorneys General, and
F. Stewart Merdian, Illinois State's Attorneys Association,
of Ottawa, of counsel), for the People.

James Geis, Deputy Defender, Office of the State Appellate Defender, of Ottawa, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The defendant, Booker Blakes, was found guilty of armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2) following a jury trial in the circuit court of Peoria County. He was sentenced to the penitentiary for a term of not less than 5 nor more than 20 years. The appellate court reversed the conviction and remanded for a new trial (27 Ill. App. 3d 439), and we granted the People's petition for leave to appeal.

On the evening of January 29, 1973, Francis Stickelmaier and Edward Barborinas were employed at the Western Avenue Liquor Store in Peoria. At approximately 8:30 p.m. a man entered the store and, after describing two men whom he identified as friends, asked Stickelmaier if he had seen them. He left the store when Stickelmaier told him he had not seen the men. Shortly thereafter the man reentered the store brandishing a pistol. He approached the counter where Stickelmaier and Barborinas were standing and ordered Stickelmaier to hand over the money from the register. The robber then fled, after ordering both men to lie on the floor. A little over two weeks later, on February 14, 1973, Barborinas saw the defendant in the South Side Bank in Peoria, where Barborinas had gone to purchase license plates, and recognized him as the robber. He called the police, who arrested the defendant. Barborinas later picked out the defendant from a lineup. However, Stickelmaier was unable to do so, and he testified at trial that he was unable to identify the defendant as the robber.

On April 4, 1973, the State filed a discovery motion, which in part asked the defendant to inform it whether he was going to assert an alibi defense. The motion was that in the event the defendant would present a defense of alibi

that he be ordered to inform the prosecution where he was and whom he would call as witnesses to support that defense.

The complaint filed against the defendant on February 15, 1973, stated the date of the robbery to have been January 25, 1973. At the preliminary hearing Barborinas testified that the robbery took place on that date. The indictment, returned on March 16, 1973, also alleged the robbery date to have been January 25. However, on the State's motion the indictment was amended to show January 29, 1973, as the date of the crime. The record does not show when the defendant was informed that the date first charged was in error, but his answer to the discovery motion was filed prior to April 20, the date the State's motion to amend was filed, and it named four persons who could establish his whereabouts on January 25 or January 29, 1973. One named was the manager of the Inman Hotel in Champaign, Illinois. The answer also stated that the defendant was going to introduce into evidence the registration and telephone message log book of the hotel.

Only two persons named in the answer, Dorothy Jackson, his sister, and John Fleming, were called by the defendant as witnesses. Dorothy Jackson testified that the defendant came to her home around 8:05 p.m. on January 29, 1973, and that he left 15 minutes later. Fleming said that he left Dorothy Jackson's house in the company of the defendant at about 8:15. He testified that he dropped off the defendant at Neal's Lounge at 8:20 and that the defendant was there when Fleming returned at nine o'clock. Neal's Lounge is approximately 2½ miles from the Western Avenue Liquor Store.

The defendant denied the commission of the robbery. In his opening statement the defendant's attorney said the evidence would show that the defendant had been at another place some distance away at the time of the crime. When the defendant took the stand he testified simply that

Fleming dropped him off at Neal's, which he said was a private club, and that he remained there more than five hours—until 1:30 a.m. The assistant State's Attorney brought out on cross-examination that the defendant had been a member of the club for two years and that he went there often (every week). The following was part of the cross-examination:

"Q. Okay, so you are pretty familiar with the place [Neal's Lounge] then?

A. Yes.

Q. And the people in the place and employees and so forth are pretty familiar to you, wouldn't that be true?

A. Yes.

Q. Who was in Neal's at the time you went there January 29, 1973?

A. There were quite a few people in there.

Q. Who, in particular that you knew?

A. George Johnson, Willie Cathrew, a guy by the name of Russell, Joe Moore, Herman Carter. There was a lot of others, but I can't remember everybody's name.

Q. Those names you happen to remember right now?

A. Yes."

There was no objection made by the defendant to the cross-examination.

During closing argument the prosecutor referred to the cross-examination and commented that persons the defendant had said were in the club that night had not appeared to testify. The defendant in his argument answered that the People, not he, had brought out the names of the persons. He said that sometimes people "just don't remember" and observed that one can't jog their memory as to a past date and you can't ask them to come in and lie. He added that the defense "brought in some witnesses that somewhat corroborated his story." The prosecutor in his reply said that while the burden of proof remains on the prosecution throughout a trial, if the defendant tells the jury he was at a certain place at the time of the crime, and that there were other people there

that could help him, the jury has a right to consider the absence of those people at the trial.

The People contend that there was no error in the cross-examination of the defendant and that the prosecutor's comments were proper. The defendant has abandoned what apparently was his earlier argument that there was error in the cross-examination and in the prosecutor's comments generally. In his oral argument here he stated he was limiting his claim of error by the trial court to the following: The defendant was asked on cross-examination only whom he saw that night at the club and not who was present who could testify the defendant was there at the time of the robbery. Since the defendant did not offer the persons he named as alibi witnesses, the People committed reversible error during closing argument when they commented upon the defendant's failure to call them as witnesses.

The People are correct in their contentions that there was no error in the cross-examination allowed or in the comment made in argument.

It is clear that the scope of cross-examination rests within the sound discretion of the trial court and absent a showing of abuse its exercise of discretion will not be upset on appeal. Where a defendant complained of his cross-examination this court in *People v. Burris,* 49 Ill.2d 98, 104, said: "The defendant who takes the stand and testifies in his own behalf in a criminal case not only offers himself as a witness in his own behalf but thereby subjects himself to legitimate cross-examination. The extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court."

The defendant had in his opening statement said that he had not been in the liquor store but had been at "another place." When he testified he in effect said simply that he had been at the club and that he had been there over five hours. It was certainly within the trial judge's

discretion to allow the cross-examiner to inquire as to the defendant's familiarity with the club, its employees, and as to what members had been in the club during the five-hour period he said he had been there.

Similarly there was no error in the comments made in closing argument. In *People v. Lion,* 10 Ill.2d 208, the defendant was charged with murder and he contended, for the purpose of showing an absence of malice, that he was intoxicated at the time of the crime. He had told the police that he blacked out shortly before the crime and the next thing he remembered was awaking in the hospital. This court held that it was proper for the prosecution to comment "upon the fact that defendant had not seen fit to call the hospital attendants to testify as to his state of inebriation." (10 Ill.2d 208, 216.) This court, in *People v. Williams,* 40 Ill.2d 522, 528-29, *inter alia* cited *Lion,* and observed:

> "[A] jury in its deliberations is not limited to a consideration of that which is, strictly speaking, testimony. To the contrary, it may properly consider any facts developed in the trial from which a reasonable inference may be drawn for or against either party. For instance, if it is developed in a trial that a witness exists, presumably under the control of a defendant, who can throw light upon a vital matter, and he is not produced, certainly a jury may fairly consider that fact, and, likewise, counsel would have a legitimate right to comment thereon. \*\*\*
>
> [I] t is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance

entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution."

The prosecutor here was referring only to the obvious in commenting that the defense had not produced anyone from the club, including the men the defendant named in his testimony, to testify.

The defendant's argument that he was asked on cross-examination only whom he had seen and was not asked who had seen him so that they could testify that he was at the club is too finical to be persuasive. The defendant testified that in addition to the five men he named "there was a lot of others [in the club whom he knew] but I can't remember everybody's name." He was in the club that night for over five hours, he testified. He had been a member for two years and he visited there every week. It is unreasonable to make the narrow contention that as he had been asked only as to whom he had seen and not as to who had seen him, no comment could be made that he had failed to provide support for his story.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. In my opinion improper comment during closing argument was so clearly prejudicial that the appellate court judgment reversing the conviction should be affirmed.

The record shows the following during the cross-examination of the defendant:

"Q. Okay, so you are pretty familiar with the place [Neal's Lounge] then?
A. Yes.

Q. And the people in the place and employees and so forth are pretty familiar to you, wouldn't that be true?

A. Yes.

Q. Who was in Neal's at the time you went there January 29, 1973?

A. There were quite a few people in there.

Q. Who, in particular that you knew?

A. George Johnson, Willie Cathrew, a guy by the name of Russell, Joe Moore, Herman Carter. There was a lot of others, but I can't remember everybody's name.

Q. Those names you happen to remember right now?

A. Yes."

The assistant State's Attorney, in closing argument, said:

"*** he said he went into the tavern, remained there from 8:20 p.m. until 1:30 a.m. the following morning. And I asked the defendant if he was familiar with the place, knew the place, people in the place were familiar with him. He said they were. And I asked him what particular individuals were in the place at that time, and he named a number of names, about five in all, a Cathrew, Moore, Carter, and a couple of others I can't recall. As I recall there were about five names of people that were there when he was; none of them were called to testify.

MR. BARTON [defense counsel]: I object to this Judge and move for mistrial. I would like the jury to be instructed to disregard that.

MR. INMAN [assistant State's Attorney]: Your Honor, if I may call three cases to the court's attention on that point.

THE COURT: The objection is overruled; motion for mistrial is denied. You may proceed.

MR. INMAN: These five people were not here. You never heard them testify from that stand; these five people who, if they saw defendant at that time and place, could have established that alibi for the defendant. But these five people were not here. Where they were, why they weren't here, why they were not subpoenaed by the defendant I don't know. I didn't know of them until this morning. But when you come to consider the defendant's testimony in connection with this, remember it is his testimony only that is called to establish his alibi, his

testimony only out of the six who might have been called to testify."

The majority, relying upon *People v. Lion,* 10 Ill.2d 208, and *People v. Williams,* 40 Ill.2d 522, concludes:

"The prosecutor here was referring only to the obvious in commenting that the defense had not produced anyone from the club, including the men the defendant named in his testimony, to testify." 63 Ill.2d at 360.

*Lion* does not support the majority's position. In that case the court referred to "certain remarks" made by the prosecuting attorney and stated that he had "commented upon the fact that defendant had not seen fit to call the hospital attendants" who presumably could have testified that he was intoxicated when brought to the hospital. Without discussion or explanation of its rationale, the court disposed of the defendant's contentions by reference to *People v. Sicks,* 299 Ill. 282, *People v. Tanthorey,* 404 Ill. 520, and *Siebert v. People,* 143 Ill. 571, none of which bear even remote resemblance, factually, to this case. *People v. Williams,* 40 Ill.2d 522, is so clearly distinguishable on its facts that no further discussion of that opinion is required.

The record shows that defendant testified at a morning session of the trial. Following the testimony of another defense witness the court recessed until 1 p.m. The People then called one rebuttal witness, and closing arguments commenced at approximately 2 p.m. No showing was made that the People attempted to locate or subpoena the persons whose names were elicited during the cross-examination of defendant, and the record fails to show that they were not available to testify. This case is similar to the situation presented in *People v. Munday,* 280 Ill. 32. In *Munday,* the circuit court permitted the State's Attorney, in closing argument, to comment on defendant's failure to call a co-defendant as a witness. In reversing the conviction the court said:

"When objection was made to the argument *** the court overruled it, and the jury were thereby given to understand that he had correctly stated the law. The jury were thus told, as plainly as though they had been instructed in writing, that it was the duty of plaintiff in error, under the law, to call his co-defendants as witnesses, and that they had a right to consider that as a circumstance against him and to give it such weight as they deemed it entitled to. No duty devolved upon plaintiff in error to call anyone as a witness. It was his privilege to produce witnesses and to make a defense or not, as he chose. The duty devolved upon the State to prove his guilt beyond all reasonable doubt before the jury were warranted in convicting him. The duty did devolve upon plaintiff in error not to put it without the power of the State to produce any material witness, and if he did so the State had the right to show that fact as a circumstance against him. No such situation is presented here. To say that it was the duty of plaintiff in error, under the law, to produce witnesses who were equally accessible to the State and who were supposed to be in possession of facts having a bearing upon the truth or falsity of the charge against him would be placing a burden upon him that the law does not require or tolerate. Such a rule would be in conflict with the doctrine of the presumption of innocence. It is unfortunate that in a case involving so much time, labor and expense a prosecutor in his zeal to secure a conviction should permit himself to overstep proper bounds and by improper means attempt to create a conviction in the minds of the jury of the guilt of the defendant." 280 Ill. 32, 46-47.

In *People v. Rubin,* 366 Ill. 195, the State's Attorney

had commented on the defendant's failure to call his employees as witnesses. Relying on *Munday*, the court reversed the conviction.

In this case, where one of the two eyewitnesses was unable to identify defendant, error of this magnitude cannot be held to be harmless. Defendant did not receive a fair trial, and the judgment of the appellate court should be affirmed.