THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
L. C. RILEY, Defendant-Appellant.

First District (5th Division)   No. 77-1545

Opinion filed July 28, 1978.

Joseph A. Ettinger, Ronald M. Lake, and Rick M. Schoenfield, all of Ettinger and Lake, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial defendant, L. C. Riley, was found guilty of the offense of armed robbery, for which he was sentenced to a term of 8 to 12 years. On appeal defendant contends that: (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied a fair trial by the admission of certain hearsay testimony into evidence; (3) the trial court erred in not giving a limiting instruction to the jury, *sua sponte*, concerning the State's use of out-of-court statements to impeach a defense witness; (4) the State improperly elicited the names of potential defense witnesses on cross-examination and then improperly commented upon the failure of the defense to call those witnesses; (5) he was denied a fair trial both by the State's improper questioning of defense witnesses and by its improper closing arguments to the jury; (6) defense counsel was incompetent; and (7) his sentence is excessive. We reverse and remand. The pertinent facts follow.

Pearlie Webster managed the Roseland Record Shop at 10657 South Michigan, Chicago. Rose Watkins also worked at this record store. Ms. Webster stated that on June 7, 1974, at approximately 6 p.m., she, her son, and Ms. Watkins were in the store when three men entered.

One of the men, whom Ms. Webster identified as defendant, walked up to Ms. Watkins and put a gun to her head, announcing a "stick-up." He told one of his accomplices, who was carrying a butcher knife, to get the cash register, which Ms. Webster opened. She stated that $105 was taken by the man.

The witness also testified that she had seen defendant several days prior to the robbery when he had tried to get her to open the door after the store had closed so he could buy a record. Defendant wore jeans and a purple shirt during the robbery. He was the one who was giving all the orders. Ms. Webster, her son, and Ms. Watkins were all ordered into the back room of the store and told not to come out until after defendant left. They did so, only returning after they heard the front door close. The knife had been left by the cash register. When the police came, both Ms. Webster and Ms. Watkins spoke with them and gave them information.

Ms. Webster attended a lineup sometime around June 15, 1974, but she was unable to identify anyone. On July 17, 1974, she was shown five to eight pictures by Officer Dennis Cullom, of the Chicago Police Department. Cullom was alone when he showed her these photos. She picked out defendant's photo as being that of the gunman in the robbery.

Officer Rowland of the Chicago Police Department responded to the robbery call, along with his partner, on June 7. When they arrived they were unable to talk with Rose Watkins because she was very upset. However, Pearlie Webster was able to give the officers a description of two offenders, both black males. One was 5'5" tall, 145 pounds, in his early 20's, with black hair, brown eyes, and a dark complexion. He wore a purple shirt and carried a blue steel gun. The other man, who carried the knife, had a light complexion, black hair, and brown eyes. He was 5'9" tall, 160 pounds, and about 20 years old. The officers located the butcher knife which had been left near the cash register in the store, but no fingerprints were found suitable for identification.

Officer Dennis Cullom testified that when news of the robbery and a description of the offenders was broadcast, he and his partner toured the area. On July 2, nobody had yet been arrested for the robbery. On that day Cullom saw defendant, whom he knew, in a schoolyard at 101st and Indiana. He asked defendant about the robbery, and defendant said that he had been asked to participate, but had not done so.

Defendant told Cullom that Jimmy Rogers had been the gunman, and James Edwards, also known as James Wiggins, had jumped over the counter to scare the women. Someone named Tiko was also involved.

The offenders fled in a car to Wiggins' house, where they split the proceeds of about $100. Defendant indicated that the reason the record store was robbed was because it was thought to be an easy target, since women worked there.

Based on this conversation Rogers and Wiggins were arrested. Both suspects were identified by Ms. Watkins in separate lineups. Cullom "believed" that Ms. Webster was also present at these lineups.

As a result of unsuccessfully trying to locate the individual called Tiko, the officers decided to have the victims view a number of photos, including one photo of defendant. Both Ms. Webster and Ms. Watkins identified defendant from his photo as one of the participants in the armed robbery.

Defendant testified in his own behalf that he had at various times purchased records at the Roseland Record Shop and both Pearlie Webster and Rose Watkins had waited on him. However, he denied ever going to the shop after it was closed and trying to persuade Ms. Webster to open the door. He also denied going there at all on June 7. Defendant stated that on that date he did not own a gun, and he was not with anyone who had a gun or a knife. He denied talking to anyone about a robbery on June 7.

Defendant stated that early on the morning of June 7 he and his girlfriend, Natalie, picked up his daughter and brought her to her grandmother's house. Defendant then went to the home of two brothers, Freddie and Frederick, at 106th and State to prepare for a party. With the exception of a brief shopping trip, he spent the rest of the day at this house. He was there between 5 and 7 p.m., and remained until 11:30 p.m. when he left with Natalie. At the time of the robbery he was with Natalie, Freddie, and Frederick. Freddie and Frederick were both in prison at the time defendant was on trial.

Defendant also testified that he knew Officer Cullom, having been arrested by him several times. On July 2 he saw Cullom at a schoolyard. At that time two "guys" dropped a bag of marijuana near defendant's foot, so the officers arrested all three of them. Cullom asked about the June 7 robbery and implied that he would not charge defendant with the marijuana offense, in exchange for information. Defendant insisted to Cullom that he knew nothing about the robbery. Defendant thought he was ultimately arrested that day on a disorderly conduct charge.

Defendant said that he did not own a purple shirt, but he did have a burgundy one. He denied knowing Edwards or Tiko and said that he first learned about the robbery when he was arrested for disorderly conduct. He stated that the State's witnesses were lying in their testimony about him.

Rose Watkins testified that she was working at the record store when it

was robbed. Some men entered the store while she was reading, facing away from the door. One of the men came to the counter and Ms. Watkins asked if she could help him. He put a gun to her head and told her not to look at him, but just to give him the money. Another man jumped over the counter and took the money from the register. Ms. Watkins thought that about $20 was taken in the robbery, because she and Ms. Webster had "taken inventory" and removed the rest. She did not hear Pearlie Webster say that $105 was missing.

The witness further testified that she got a clear, good look at the gunman, and that it was not the defendant. She stated that she knew who defendant was because she had seen him before in the neighborhood. Defendant was not in the record store on the day of the robbery.

Ms. Watkins also stated that when she selected defendant's photograph, she told the police only that it might be the man. When she attended earlier court proceedings in this case, she did not identify the defendant because she "didn't know if that was him." She remembered saying then that she would know the man if she saw him again but did not remember seeing him in court. If she had pointed out defendant at the preliminary hearing, she would have said she was not sure, because he was not the man. At trial she testified that she might not be able to recognize the gunman if she saw him in court that day.

Ms. Watkins explained that she had gone to Michigan to try to avoid testifying. She had been to court a number of times on the instant case and had lost money on those occasions because she had been working. She became tired of going to court. At the time of trial Ms. Watkins had moved back to Chicago. She came to court with defendant's mother, whom she had just met that day.

Assistant State's Attorney George Lynch testified in rebuttal that at the defendant's preliminary hearing, Rose Watkins had identified defendant as the man who robbed the record store and put a gun to her head. If her identification of defendant at that time had been uncertain, it would have been reflected in Lynch's report, which he prepared at the first recess after the hearing. He stated that Ms. Webster also identified defendant at the preliminary hearing.

Officer Robert McGuire testified that he and his partner, Officer Cullom, showed some photographs to Ms. Watkins. He stated that when she picked out defendant's photo she did not say that it "could" or "may" be the person. McGuire claimed that Ms. Watkins picked out and handed back defendant's picture without saying anything. At the request of the police, she accompanied them the next day to obtain a warrant.

## Opinion

Defendant initially contends that he was not proven guilty beyond a reasonable doubt. Since we have determined that, for reasons stated later

in this opinion, the instant case must be remanded for a new trial, we need not deal with this contention at great length. We have carefully reviewed the entire record in this case and have concluded that, absent prejudicial error, there was testimony therein which, if believed by the jury, was sufficient to convict defendant.

■■ It has long been the rule in Illinois that the identification of even one witness is sufficient to convict, provided the witness viewed defendant under such circumstances as would permit a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) Likewise, it is well settled that determinations as to the weight and credibility to be afforded a witness' testimony, as well as the resolution of conflicts between the testimony of witnesses, are for the jury as the trier of fact. (See *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) In this case the jury could have believed the testimony of Ms. Webster and we cannot say that such a determination would be so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt.

However, we have concluded that error occurred in this case which did prevent defendant from obtaining a fair trial. We therefore turn to defendant's second contention; that he was prejudiced by the admission of improper hearsay testimony. We agree.

■■■ Officer Cullom testified during the State's case-in-chief that both Ms. Webster and Ms. Watkins made a photographic identification of defendant as one of the robbers. The State concedes that such testimony concerning previous identifications generally constitutes inadmissible hearsay evidence. (*People v. Smith* (1974), 18 Ill. App. 3d 859, 310 N.E.2d 734; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) However, the rule is also that the admission of such testimony is harmless error where it is merely cumulative, or is supported by a positive identification and other corroborative circumstances. (*People v. Smith*; *People v. Coleman*.) Indeed, it has been held that the hearsay rule is inapplicable to the admission of testimony concerning out-of-court statements, and thus no error occurs at all, if the out-of-court declarant himself is available at trial and competently testifies to the same matter. *People v. Sepka* (1977), 51 Ill. App. 3d 244, 367 N.E.2d 138; *People v. Williams* (1973), 16 Ill. App. 3d 121, 305 N.E.2d 718; *People v. Keller* (1970), 128 Ill. App. 2d 401, 263 N.E.2d 127.

In this case then, no error occurred in allowing Cullom to testify as to Ms. Webster's identification, since she testified at trial as to this same fact. However, the testimony concerning Ms. Watkins' identification of defendant falls in a different category. She did not testify concerning this fact and thus it was clearly error to allow Cullom's testimony in this regard. The question before this court, therefore, is whether such error was harmless in this case. We conclude that it was not.

While Cullom's testimony was not objected to, the admission of such

hearsay identification evidence constitutes plain error (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) and requires reversal when such testimony is utilized as a substitute for courtroom identification, or when it is utilized to strengthen a weak identification. (*People v. Smith; People v. Coleman.*) In this case, there is little doubt that Cullom's testimony was offered as a substitute for the testimony of Ms. Watkins herself. The record reveals that the State, at the time of Cullom's testimony, had no idea of Ms. Watkins whereabouts and thus could not plan to call her as a witness. Therefore, the only purpose of Cullom's testimony would be as a substitute for Ms. Watkins' testimony; to substantively prove that another person had identified defendant as the robber. (See *People v. Smith* (1969), 105 Ill. App. 2d 8, 245 N.E.2d 23.) This constitutes reversible error.

■■ The fact that Ms. Webster identified defendant at trial does not persuade us that this error was harmless. Indeed, the effect of Cullom's testimony during the State's case-in-chief was to give the impression to the jury that Ms. Webster's testimony against defendant was corroborated. This is not permissible. (See *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126.) Where a conviction rests solely on the identification testimony of one witness, with no important corroborating circumstances, and such testimony was impermissibly bolstered by the admission of hearsay evidence, this court will reverse and remand for a new trial. (See *People v. Lukoszus* (1909), 242 Ill. 101, 89 N.E. 749; *People v. Fair* (1977), 45 Ill. App. 3d 301, 359 N.E.2d 848; *People v. Turner* (1968), 91 Ill. App. 2d 436, 235 N.E.2d 317; *People v. Wright.*) While the testimony of one witness may be sufficient to convict, the record in such a case must be free from prejudicial error. *People v. Wright.*

Nor does the fact that Ms. Watkins later took the stand to deny the identification render this error harmless. Her testimony merely highlights that in this case the identification evidence conflicted. Thus, the introduction in the State's case-in-chief of improper evidence corroborating Ms. Webster's identification could well have affected the jury's determination of which witness to believe. Despite the fact that the State called two rebuttal witnesses (Lynch and McGuire), it is possible that Cullom's testimony could have played an equally significant part in the jury's decision to reject Ms. Watkins' testimony. Where evidence is conflicting and there is incompetent and prejudicial testimony, it cannot be held that the jury acted only on the competent evidence. *People v. Rogers* (1932), 348 Ill. 322, 180 N.E. 856; *People v. Turner.*

■■ In sum, therefore, we cannot conclude that the error of admitting Cullom's testimony in this case was harmless beyond a reasonable doubt. (See *People v. Crotty* (1976), 44 Ill. App. 3d 413, 357 N.E.2d 1360.) Where

there is a reasonable possibility that erroneously admitted testimony contributed to a conviction, the error cannot be considered harmless. *People v. Robinson* (1977), 46 Ill. App. 3d 713, 361 N.E.2d 138.

Defendant additionally argues, and the State concedes, that a limiting instruction should have been given to the jury concerning the rebuttal testimony by Lynch and McGuire. These two witnesses testified, respectively, that Ms. Watkins identified defendant, without qualification, at the preliminary hearing in the case as well as identifying his photograph. No instruction was given to the jury, however, nor was any requested, that this testimony could only be considered for impeachment, and not substantive, purposes. The only instruction given was the general one prior to deliberations that the fact a witness had made prior inconsistent statements may be considered in determining credibility. (Illinois Pattern Jury Instructions, Criminal, No. 3.11.) This instruction does not inform the jury that the impeachment evidence may not be considered substantively.

■■■ While the general rule relating to impeachment evidence is that a trial court is under no duty to issue a limiting instruction *sua sponte* (see *People v. Sigman* (1976), 42 Ill. App. 3d 624, 356 N.E.2d 400, *cert. denied* (1977), 434 U.S. 839, 54 L. Ed. 2d 102, 98 S. Ct. 133), we agree with the parties to the instant appeal that such an instruction should have issued in this case. Concerning the use of prior inconsistent statements for impeachment purposes, the Illinois courts have specifically, and repeatedly, emphasized that it is the court's duty to insure that the jury is instructed that the statements are not admitted as substantive evidence, but only for the purpose of impeaching the credibility of the witness. (See *People v. Paradise* (1964), 30 Ill. 2d 381, 196 N.E.2d 689; *People v. Tate* (1964), 30 Ill. 2d 400, 197 N.E.2d 26; *People v. Tunstall* (1959), 17 Ill. 2d 160, 161 N.E.2d 300; *People v. Fields* (1975), 31 Ill. App. 3d 458, 334 N.E.2d 752; *People v. Kelly* (1974), 22 Ill. App. 3d 908, 317 N.E.2d 282; *People v. Bacon* (1971), 2 Ill. App. 3d 324, 276 N.E.2d 782.) While the prosecutor in this case did not go to the extraordinary lengths that occurred in some of the above-cited cases to elicit the rebuttal testimony, nonetheless a limiting instruction should have issued. This is especially true in light of the fact that Cullom had been allowed to improperly inform the jury during the State's case-in-chief that Ms. Watkins had identified defendant. Under these circumstances the jury may have considered this as substantive evidence, and we believe, naturally would have considered the rebuttal testimony in connection with Cullom's as also being substantive evidence.

We believe that the foregoing errors, without more, are sufficient grounds for a reversal and remandment of this case. Therefore, we need

only comment briefly upon those remaining issues which might recur, and whose determination would thus prove instructive in the retrial of this case.

Defendant contends that it was error to allow the State to elicit the names of potential defense witnesses and then comment upon defendant's failure to call such witnesses. We must disagree.

In this case, defendant testified that on the day of the robbery he and his girlfriend went to a house at 106th and State Streets. During direct examination he stated that between 5 and 7 p.m. (the time of the robbery) he was at this house. On cross-examination the State elicited testimony that during these hours at the house defendant was with his girlfriend, and the two brothers who were having the party. During closing argument the State commented that defendant had failed to produce any of these persons as witnesses to support his alibi defense. On the basis of our supreme court's recent decision in *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, we must conclude that such conduct by the State was not improper.

In *Blakes* the defendant testified that he was at a certain "club" at the time of the robbery. On cross-examination the State elicited the names of those persons he saw while at this locale, and later commented upon his failure to produce such witnesses. The court held that it was within the trial court's discretion to allow such cross-examination, in view of the proffered alibi defense. As to the closing commentary, the *Blakes* court noted that:

> "The prosecutor here was referring only to the obvious in commenting that the defense had not produced anyone from the club, including the men the defendant named in his testimony, to testify." (63 Ill. 2d 354, 360, 348 N.E.2d 170, 174.)

The precedental nature of the *Blakes* decision has already been acknowledged by the Illinois Appellate Courts. See *People v. Haynes* (1976), 41 Ill. App. 3d 940, 355 N.E.2d 203.

■■ We therefore conclude that *Blakes* is controlling in the instant case. Defendant's testimony that he was at another locale at the time of the robbery constitutes an attempt to assert an alibi defense. (See *People v. Thomas* (1977), 49 Ill. App. 3d 961, 364 N.E.2d 641.) Thus, the State could properly inquire as to who was present with defendant at this other locale, and could furthermore comment upon his failure to call such potential alibi witnesses.

Of the remaining issues raised by defendant, we believe that only two call for any comment by this court. Defendant was repeatedly asked during cross-examination whether Officer Cullom was lying when he stated that defendant had told him about the robbery and who participated in it. The State culminated this questioning by asking

whether defendant was asserting that all its witnesses had told "a bunch of lies." This line of inquiry was improper.

■■ These questions clearly invaded the province of the jury to determine which witnesses, whose testimony conflicts, are telling the truth. (See *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450.) It is improper to ask a defendant's opinion concerning the veracity of other witnesses. See *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Meeks* (1973), 11 Ill. App. 3d 973, 297 N.E.2d 705, *cert. denied* (1974), 418 U.S. 905, 41 L. Ed. 2d 1153, 94 S. Ct. 3196; *People v. Hicks.*

Defendant also argues that it was unfair for the State to make the following statement during closing argument about Ms. Watkins' attempt to avoid testifying:

> "There would be no reason to avoid us if she was, in fact, telling the truth. Why didn't she come to us and tell us? Why, when we called her, didn't she say, 'Listen, folks, I'm not testifying for you.' She was going to leave. She wasn't going to be around because she knew that she was going to lie on the stand."

It is defendant's contention that this statement unfairly and falsely infers to the jury that the State could not have required her presence by subpoena. We disagree.

■■ First of all, as noted by the State, defendant fails to suggest why the prosecution would want to compel the testimony of a witness who would not identify defendant. Secondly, in view of the conflicting testimony regarding Ms. Watkins' alleged identification of defendant, the inference drawn by the State in closing merely represents a fair comment upon the evidence. A prosecutor may call a witness false, if in so doing, he relies on the evidence and the inferences from it to support his conclusion. (See *People v. Owens.*) In reviewing the closing argument by the State in this case it is clear that the complained-of statement occurs during that portion wherein the prosecutor is in fact merely characterizing Ms. Watkins' testimony as false, based on the evidence adduced at trial. This is permissible.

For the aforementioned reason, the judgment of the circuit court of Cook County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.