NOTICE

Decision filed 03/23/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190131-U

NOS. 5-19-0131, 5-19-0132, 5-19-0133 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | Nos. 14-CF-809, 14-CF-898, |
| | ) | 14-CF-899 |
| | ) | |
| JASON E. EHLERS, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held:* Where the circuit court did not err in summarily dismissing defendant's post conviction petition, and any argument to the contrary would have no merit, defendant's appointed counsel on appeal is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    Defendant, Jason E. Ehlers, pled guilty to multiple sex crimes against teenaged boys, including his own stepson, and is currently serving an aggregate sentence of 35 years in prison. Defendant filed a *pro se* petition for postconviction relief, which the circuit court summarily dismissed. He now appeals from that summary dismissal. Defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), concluded this appeal lacks merit, and on that basis, filed a motion for leave to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a memorandum of law in support thereof. Defendant filed an objection to

1

OSAD's motion. We agree with OSAD that this appeal lacks merit. Accordingly, we grant OSAD leave to withdraw as counsel and affirm the judgment of the circuit court.

¶ 3                                      BACKGROUND

¶ 4    In April 2014, the State filed multiple charges against defendant in Madison County case Nos. 14-CF-809, 14-CF-898, and 14-CF-899. In No. 14-CF-809, defendant was charged with four felony counts: two counts of predatory criminal sexual assault of a child, D.B., and two counts of criminal sexual assault against D.B. In No. 14-CF-898, defendant was charged with six felony counts and three misdemeanor counts: aggravated criminal sexual abuse of S.T., G.B., and J.L.; indecent solicitation of a child, S.T.; and sexual exploitation of G.B., R.N., J.L., J.S., and J.W., all of whom are children. In No. 14-CF-899, defendant was charged with four counts of sexual assault of F.T. and one count of aggravated criminal sexual abuse of F.T.

¶ 5    At the times of the offenses, defendant was in his early-to-mid-30s. D.B. was defendant's stepson. G.B. was D.B.'s cousin. The other six victims were friends of D.B. Defendant was a teacher in the Bethalto School District, but none of the victims was his student.

¶ 6    On December 21, 2015, defendant, defense counsel, and an assistant state's attorney appeared before the circuit court. Defense counsel informed the court that the parties had negotiated a partial agreement as to all three cases. In No. 14-CF-809, defendant would plead guilty to one count of predatory criminal sexual assault of a child, a Class X felony, while the other three counts would be dismissed. In No. 14-CF-898, he would plead guilty to three counts of aggravated criminal sexual abuse, Class 2 felonies, one count of sexual exploitation of a child, a Class 4 felony, and two counts of sexual exploitation of a child, Class A misdemeanors, while the other three counts would be dismissed. Finally, in No. 14-CF-899, he would plead guilty to one count of criminal sexual assault, a Class 1 felony, while the other four counts would be dismissed.

2

The parties also agreed that in No. 14-CF-809, the sentence for predatory criminal sexual assault of a child would be capped at 20 years in prison, followed by mandatory supervised release (MSR) for a term of 3 years to natural life; in No. 14-CF-898, the statutory sentencing ranges would apply, and those sentences would be concurrent with the sentence in No. 14-CF-899; and in No. 14-CF-899, the statutory sentencing range would apply, followed by MSR for a term of 2 years to natural life, but the sentence would be consecutive to the sentence in No. 14-CF-809.

¶ 7    In response to the circuit court's queries, defendant indicated that he knew the actual identities of the complainants, despite their being identified in the charging instruments by their initials only, and that he had reviewed discovery with defense counsel. The court recapitulated defense counsel's statement of the terms of the plea agreement, and defendant indicated that this was his agreement. The court concluded that the minimum aggregate sentence was 10 years' imprisonment and the maximum aggregate sentence was 35 years' imprisonment. Defendant agreed.

¶ 8    In response to the court's further queries, defendant indicated that he was 38 years old, had a master's degree, was not under the influence of any drugs or alcohol, and did not suffer from any disability that would prevent him from understanding the court proceedings. The court then reviewed with defendant the counts in each of the three cases, to which he intended to plead guilty, and defendant indicated his understanding of the nature of each charge. Defendant then pled guilty.

¶ 9    The court admonished defendant that he was presumed innocent at every stage of the proceedings, the State had the burden of proving him guilty beyond a reasonable doubt, and he was not required to prove anything. The court also admonished defendant that he had a right to the attorney of his choice, or if he could not afford an attorney, the right to be represented by the public defender at no cost. The court explained that defendant had a right to persist in his pleas of not

guilty, the right to a trial, whether by a jury or by a judge, as he chose, and that the jury or the judge would hear all of the evidence and decide on his guilt or innocence. The court further informed defendant that he had a right to confront and cross-examine the witnesses against him, the right to summon or subpoena witnesses to testify on his behalf, and the right to testify, if he so chose. Finally, the court admonished defendant that by pleading guilty, he would be "waiving or giving up" most of his rights and that there would not be a trial of any kind. At each step of the court's admonishments, defendant indicated his understanding.

¶ 10    The State presented a detailed factual basis as to each of the counts. The factual basis included the expected testimonies of the victims—D.B., F.T., S.T., G.B., J.L., R.N., J.S., and J.W.—describing the numerous sex acts that defendant performed on them or the sexual scenes they had witnessed.

¶ 11    The court then reviewed with defendant the possible penalties, including terms of imprisonment and of MSR, for the offenses to which he pled guilty. Defendant indicated his understanding of the penalties and that he did not have any questions about them. Defendant stated that he had discussed these pleas with his defense counsel. He also averred that nobody forced or threatened him or, promised him anything, apart from the plea agreement, to get him to plead guilty, and that he was entering his pleas freely and voluntarily. The court found that defendant understood the nature of the charges and the possible penalties, and that he "freely, knowingly, and voluntarily desire[d] to waive [his] right to a trial and enter pleas of guilty." The court found a factual basis for the guilty pleas, and accepted those pleas, entering judgment upon them.

¶ 12    The sentencing hearing was held on February 24, 2016. Before the first witness was sworn, the circuit court admonished defendant of his appeal rights, explaining that at the end of the

4

hearing, "people's minds are elsewhere." The court admonished defendant in accordance with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001).

¶ 13    The State's witnesses included relatives of the various victims and an expert in child sexual abuse trauma. They testified about the devastation felt by the victims, their families, and the broader community as a result of defendant's actions. For the defense, defendant's mother testified and pled for psychological help for her son.

¶ 14    In his statement in allocution, defendant began: "I would like to apologize for my unforgiveable actions and the inconceivable choices I have made. As a result of my actions, I have shattered the trust of multiple individuals and their families for which I understand [*sic*] can never be restored." He stated that he "would like to commend [D.B.] for having the courage to step up and report what was happening to him," and said that D.B. and the other victims "spoke up about these horrible acts at a time in their lives when most would want to run and hide." He hoped that, with help, the victims could "go on to have happy and productive lives and to never think of me again." He felt as if he had been living his life "as two different people. One of those people was an upstanding teacher and a member of the community while the other was an obscene monster." He understood that he "deserve[d] to be punished" and he "accept[ed] whatever the Court decide[d] [was] appropriate."

¶ 15    The court sentenced defendant in No. 14-CF-898 to seven years' imprisonment, followed by four years of MSR, for each of the three counts of aggravated criminal sexual abuse; three years in prison, followed by one year of MSR, for one count of sexual exploitation of a child; and 364 days in the Madison County jail for each of the two misdemeanor charges of sexual exploitation of a child, with all sentences concurrent with one another and with the sentence in No. 14-CF-899. In No. 14-CF-899, the court imposed 15 years in prison, followed by 3 years of MSR, for criminal

5

sexual assault. Finally, in No. 14-CF-809, the court imposed a 20-year prison sentence, followed by MSR for a term of 3 years to natural life, for the charge of predatory criminal sexual assault of a child, consecutive to the sentence in No. 14-CF-899.  In total, defendant was sentenced to 35 years in prison.

¶ 16    No postplea motion was filed.  No direct appeal was pursued.

¶ 17    On February 27, 2019, defendant filed a "Pro Se Post-Conviction Petition (Time Reduction)" in Nos. 14-CF-809, 14-CF-898, and 14-CF-899. The petition presented the following two claims:

> "[1] I received insufficient counsel as I was steered into entering a guilty plea based on misleading information and unfair pressure, therefore, not of my own free will. I specifically asked my attorney, Jessica Koester, to refrain from setting the parameters of my plea deal, as well as, setting a specific date of my open plea without my consent and approval. However, this was not the case as Ms. Koester came to me with a pre-determined date and plan to enter my plea without any discussion or agreement from myself. The parameters of this plea included pleading to a higher class felony, as well as, more prison time then I was offered in my original plea deal from the Prosecuting Attorney, Kathleen Nolan.
>
> [2] The Prosecuting Attorney, Kathleen Nolan, used my occupation as a teacher as her driving force in prosecuting my case. My case and my teaching profession were in no way related. Ms. Nolan's prejudiced demeanor was evident in her conversations with my attorneys Jeremy Sackett and Jessica Koester, as well as, with her consistent and continuous communication with various media sources."

The petition was accompanied by a single verified affidavit, wherein defendant wrote that he read the postconviction petition, and all of the facts presented therein were true and correct to the best of his recollection.

¶ 18    On March 12, 2019, the circuit court summarily dismissed the petition, concluding it was frivolous and patently without merit. Defendant perfected his appeal, and this court appointed OSAD to represent him.

¶ 19                                ANALYSIS

¶ 20    As previously noted, defendant's appointed attorney on appeal, OSAD, filed a *Finley* motion to withdraw as counsel, along with a supporting legal memorandum. We review the circuit court's summary dismissal of defendant's postconviction petition *de novo*. *People v. Boykins*, 2017 IL 121365, ¶ 9. On *de novo* review, this court applies the same analysis that the circuit court would perform (*People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151) and may affirm "on any basis supported by the record." *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003).

¶ 21    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides that a criminal defendant may challenge his conviction or sentence for substantial violations of federal or state constitutional rights. *Id.* § 122-1(a)(1); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. The Act provides for three distinct stages of examination by the court. *People v. Domagala*, 2013 IL 113688, ¶ 32.

¶ 22    At the first stage, the circuit court has 90 days to review the petition. 725 ILCS 5/122-2.1(a) (West 2018). If the court does not dismiss the petition within the 90-day period, it must docket the petition for further consideration. See *id.* § 122-2.1(b). If, however, the court finds the petition frivolous or patently without merit, the court must dismiss the petition. *Id.* § 122-2.1(a)(2).

7

That is, the court must dismiss the petition only if it "has no arguable basis either in law or in fact," *i.e.*, it relies on "an indisputably meritless legal theory or a fanciful factual allegation." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). All well-pleaded allegations, unless positively rebutted by the record, are taken as true. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). The petition shall have attached thereto "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." (Internal quotation marks omitted.) *Hodges*, 234 Ill. 2d at 10. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* at 16 "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17.

¶ 23    In the first claim of his postconviction petition, defendant stated that he was "steered into entering a guilty plea based on misleading information and unfair pressure." Specifically, defendant asked his attorney to refrain from setting (1) "the parameters of [his] plea deal," and (2) "a specific date of [his] open plea without [his] consent and approval."

¶ 24    This court is unaware of how an attorney can be expected to negotiate a plea agreement without "setting the parameters" of the agreement. No matter the parameters that counsel sets, defendant is not held to them until he agrees and pleads guilty. We also do not see how the constitution is implicated by an attorney "setting a specific date" for a guilty plea. Rather, the constitution only requires that a defendant understand and agree to a plea agreement before he enters a guilty plea pursuant to that agreement. *People v. Mitchell*, 26 Ill. App. 3d 300, 301 (1975).

¶ 25    Here, the circuit court explicitly found that defendant understood and agreed to his plea agreement, and that his pleas were wholly voluntary.  Nothing in the record contradicts the court's findings. To the contrary, the findings are fully supported by the record, and specifically by the transcript of the plea hearing, where the court admonished defendant pursuant to Illinois Supreme

8

Court Rule 402 (eff. July 1, 2012), before accepting defendant's plea. "[A] voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Thus, in general, after a defendant pleads guilty, he may not raise claims of deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" required by the sixth amendment. *Tollett*, 411 U.S. at 267.

¶ 26    In the second claim of his postconviction petition, defendant argued that the prosecutor in his case used his occupation as a teacher to prejudice him. Defendant, however, fails to provide specificity.

¶ 27    Defendant provides no facts to indicate how the prosecutor's thoughts on the case, and how she spoke about this case with defense counsel, impacted his plea or sentence. The prosecutor's communications with media outlets could have some bearing on pretrial publicity, its effect on a jury, and the fairness or impartiality of his trial (see generally *People v. Williams*, 40 Ill. 2d 522, 531-32 (1968)) but, again, defendant did not have a trial—he pled guilty. Even if there was something unconstitutional about the prosecutor's thought processes or her sharing them with others, it was waived by defendant's knowing and voluntary guilty pleas. *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 19.

¶ 28                              CONCLUSION

¶ 29    The circuit court's summary dismissal of defendant's postconviction petition was proper. Any argument to the contrary would be meritless. Accordingly, we grant OSAD leave to withdraw as counsel and affirm the judgment of the circuit court.

¶ 30    Motion granted; judgment affirmed.